HAROLD F. RUDOLPH, Plaintiff-Appellant, *v.* SANTA FE PARK ENTER-
PRISES, INC., *et al.*, Defendants-Appellees.

First District (4th Division)    No. 82—3061

Opinion filed March 15, 1984.

Susan E. Loggans and Associates, and Galowich and Galowich, both of
Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (David Reed, of counsel), for appellees.

JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Harold F. Rudolph, was injured when he was struck
by a motor vehicle being operated at the racetrack owned by the
defendant, Santa Fe Park Enterprises, Inc. The other defendants,
Bruno Duerr and Kenny Kuehn, were agents of Santa Fe. Prior to
bringing this action against Santa Fe for his injuries, Rudolph signed
an exculpatory agreement on the date of the occurrence. Santa Fe
filed a motion for summary judgment based on that executed agree-
ment. The defendant's motion was granted. Rudolph, on appeal, as-
serts that the exculpatory agreement was invalid because of the at-
tendant circumstances surrounding its execution.

On September 23, 1978, upon arriving at the race track, Rudolph knew that in order to gain access to either the pit area or the infield, it was necessary for him to sign a form at the admission gate of the raceway. At the top of the document in bold face type the form was entitled "Waiver and Release." The body of the form contained language exculpating the racetrack, its agents and employees from any accidents and injuries that may occur. On the above date, the plaintiff signed a "Waiver and Release" form at the bottom right hand corner. In that same corner was a lightly printed stamp saying that "I've read this release."

The exculpatory agreement, as described by the plaintiff, was in "very small, almost illegible print." The plaintiff also described that the lighting in the area of the admission gate was dim and was not sufficient to read the form.

Attached to the exculpatory agreement was a perforated card entitled "Pit Pass." Upon entry to the pit area or the infield, the Pit Pass card was detached from the exculpatory agreement and the Pit Pass was given back to the admitee to be worn as identification. The Pit Pass also contained exculpatory language.

In addition to signing the exculpatory agreement described above, Rudolph had previously signed a similar form on June 10, 1978, which stated that it was to cover each and every race for the 1978 season at Santa Fe. Furthermore, between June 10 and the date that the accident occurred, September 23, 1978, the plaintiff, on at least eight other occasions, executed exculpatory agreements identical to the one signed on the date of the occurrence.

On the evening the accident occurred, the plaintiff was standing in the infield when he was struck and injured by the vehicle which was driven off the track. Rudolph was then taken to a hospital where he was treated for his injuries.

Rudolph contends that he never read the relevant exculpatory agreement or the exculpatory language on the Pit Pass. Moreover, Rudolph stated in his deposition that he never read any of the exculpatory agreements he signed before entering Santa Fe Park. Rudolph also contends that he did not have a fair opportunity to read the above documents due to the poor lighting and the pressure created by the crowd; that he understood the documents he signed to merely allow him access to the pit area and that he never intended to release Santa Fe for injuries he might sustain while watching the race; and that the agreements were not explained to him.

In support of these contentions regarding the invalidity of the exculpatory agreement, Rudolph's principle reliance is on the case of

*Sexton v. Southwestern Auto Racing Association, Inc.* (1979), 75 Ill. App. 3d 338, 394 N.E.2d 49. There, the plaintiff, Richard Sexton, entered the racetrack to act as a "pitman" in the pit area. He was required to pay a $3 fee to obtain a pass to gain access to the pit area on the infield and was told to sign a paper before the pass would be issued. He signed the exculpatory agreement and was subsequently injured when he fell into a mud hole in the infield. The defendants filed a motion to dismiss pleading the agreement. Sexton responded that there was no consideration and that the agreement was void against public policy. Sexton also claimed that the agreement was not explained to him and that he did not have knowledge of its content. Further, and most significantly, Sexton claimed that the written portion of the agreement that contained the exculpatory language was covered by another paper when he signed on one of the numerous signature lines provided, that there was no time to read the agreement and that he did not intend to so exculpate the defendants. The court in *Sexton* held that the circumstances surrounding the execution of the exculpatory agreement created questions of fact for the jury as to whether he knew or should have known he was signing a release of liability.

A release or an exculpatory agreement may be set aside if there is either fraud in the execution or fraud in the inducement. (*Gutierrez v. Schultz* (1982), 109 Ill. App. 3d 372, 440 N.E.2d 451; *Sexton v. Southwestern Auto Racing Association, Inc.* (1979), 75 Ill. App. 3d 338, 394 N.E.2d 49; *Blaylock v. Toledo, Peoria & Western R.R. Co.* (1976), 43 Ill. App. 3d 35, 356 N.E.2d 639; Annot., 134 A.L.R. 6, 49-68 (1941); see generally D. Dobbs, Remedies sec. 9.6, at 645-46 (1973).) Fraud in the execution is where the party was induced to execute the release not knowing it to be a release but believing it to be an instrument of a different character. (*Babcock v. Farwell* (1910), 245 Ill. 14, 91 N.E. 683; see also *Indiana, Decatur & Western R. R. Co. v. Fowler* (1903), 201 Ill. 152, 66 N.E. 394 (an illiterate plaintiff signed a release without knowledge of what he was signing); *Johnson v. Elgin, Joliet & Eastern Ry. Co.* (1948), 338 Ill. App. 316, 87 N.E.2d 567 (plaintiff signed a release he believed to be an application for a job); Annot., 134 A.L.R. 49 (1941); Restatement (Second) of Contracts sec. 163 (1979); J. Calamari & J. Perillo, contracts sec. 9—22, at 293-94 (2d ed. 1977).) Fraud in the inducement is where the party knows that he is executing a release but was induced to do so by false representations of the other party as to matters other than the character of the instrument. *Babcock v. Farwell* (1910), 245 Ill. 14, 91 N.E. 683; see also *Ott v. Midland-Ross Corp.* (6th Cir. 1979),

600 F.2d 24 (plaintiff was induced to sign a consultant agreement in return for relinquishing claims against the defendant); *LeClair v. Wells* (Me. 1978), 395 A.2d 452 (plaintiff signed a release after an insurance adjuster misrepresented material facts); *McCall v. Trucks of Texas, Inc.* (Tex. Civ. App. 1976), 535 S.W.2d 791 (plaintiff signed a release based on representations by the defendant of the quality of the truck purchased); Restatement (Second) of Contracts sec. 164 (1979); J. Calamari & J. Perillo, Contracts sec. 9—22, at 293-94 (2d ed. 1977).

We do not believe that Rudolph has made sufficient allegations to support fraud in the execution. This type of fraud appears to have been the basis of the decision in *Sexton*, the principle case relied on by Rudolph. The court in *Sexton* cited *Kusturin v. Chicago & Alton R.R. Co.* (1919), 287 Ill. 306, 122 N.E.512, and *Johnson v. Elgin, Joliet & Eastern Ry. Co.* (1948), 338 Ill. App. 316, 87 N.E.2d 567, to illustrate that circumstances surrounding the execution of a release can create questions of fact for the jury concerning the plaintiff's knowledge at the time he signed the release. *Kusturin* involved a post-accident release in a FELA case in which the plaintiff could not speak or read any English and was told by a railroad claim agent that the release was a form necessary to obtain payment under the Workmen's Compensation Act. Similarly, in *Johnson*, another FELA action, the evidence established that the defendant's claim agent fraudulently represented the release to be an application for another job.

■ It is clear by citing these two cases that the court in *Sexton* was focusing its attention of the issue of fraud in the execution. In *Sexton*, the fact that the exculpatory language of the release signed by Sexton was covered when he signed it is evidence that fraud in the execution occurred. (See *Provence v. Doolin* (1980), 91 Ill. App. 3d 271, 414 N.E.2d 786.) In the instant case, Rudolph has failed to make any allegations that can be considered tantamount to fraud in the execution, that is signing an instrument of a different character than was represented. Neither the fact that the lighting may have been poor nor that Rudolph may have felt hurried in signing the release as a result of a crowd is sufficient to find fraud in the execution. Additionally, under these circumstances, the fact that Rudolph did not read the documents or that they were not explained to him cannot be a basis for finding fraud in the execution. The agreements were captioned in bold face type, "Waiver and Release." The conspicuousness of this heading militates against Rudolph not knowing what he was signing. Moreover, Rudolph has a general duty to read documents before he signs them and the failure to do so will not render the document in-

valid. (See *Hintz v. Lazarus* (1978), 58 Ill. App. 3d 64, 373 N.E.2d 1018; see also J. Calamari & J. Perillo, Contracts sec. 9—42, at 328-29 (2d ed. 1977).) The plaintiff has failed in each instance to allege that the defendant did anything to create impressions that Rudolph was signing anything other than an exculpatory agreement. We cannot grant the plaintiff relief simply because he has failed to exercise reasonable care before signing the agreement.

■ Furthermore, there are no factual allegations stated to support a theory of fraud in the inducement. In the instant case, the plaintiff alleged that he did not read the exculpatory agreements; that he did not understand their purpose; that he never intended to exculpate Santa Fe for injuries he might sustain while watching the race; that he did not have a fair opportunity to read the documents; and that the agreements were not explained to him. None of these allegations allege any conduct that Santa Fe fraudulently induced the plaintiff to sign the exculpatory agreement.

Because the exculpatory agreement signed by the plaintiff is valid and has full effect in barring any claim for liability against Santa Fe, and the other named defendants as agents of Santa Fe, it is not necessary to respond to the additional issues in this case.

We affirm the judgment of the circuit court of Cook County.

LINN, P.J., and ROMITI, J., concur.