I. KELLERMAN, d/b/a Authorized Sales and Service *et al.*, Plaintiffs-Appellees, v. MCI TELECOMMUNICATIONS CORPORATION, Defendant-Appellant.

First District (1st Division)   No. 84—2877

Opinion filed June 3, 1985.

Richard J. Gray, Darryl M. Bradford, Patricia Lee Refo, and Robert Markin, all of Jenner & Block, of Chicago, for appellant.

Kevin M. Forde, of Chicago, and Howard Z. Gopman & Associates, of Skokie, for appellee Phyllis Hesse.

Block, Levy & Associates, of Chicago, for other appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

In four separate but now consolidated actions, plaintiffs brought State law challenges to certain advertising practices of MCI Telecommunications Corporation (MCI), alleging violations of Illinois' Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*), the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 311 *et seq.*), common law fraud, and breach of contract. MCI moved to stay or dismiss the actions pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619), arguing the actions were preempted by Federal law and, in the alternative, that the trial court should defer to the Federal Communications Commission or to ongoing Federal cases "between the same parties for the same cause." The trial court denied the motion to dismiss on Federal pre-

emption and primary jurisdiction grounds and refused to stay proceedings. MCI perfected an interlocutory appeal from the denial of the stay order pursuant to Supreme Court Rule 307. (87 Ill. 2d R. 307.) MCI also sought to have the preemption issue certified for review pursuant to Supreme Court Rule 308 but the trial court denied this motion. (87 Ill. 2d R. 308.) We affirm.

The record reveals that all plaintiffs are subscribers of MCI's long-distance telephone service. The complaints allege that defendant engaged in a practice of billing its customers for long-distance calls which were initiated but never completed because the recipient failed to answer or the caller aborted the call before it was completed. The complaints further allege that defendant billed its customers an extra minute or more in additional to actual communication time where the phone rang six or more times before it was answered. Finally, one of the complaints alleges that MCI customers must pay a local call charge to the local telephone company servicing the location in addition to the charges paid to MCI for a long-distance call and that MCI lacked the "capacity" to provide service of comparable quality to AT&T. Plaintiffs do not challenge defendant's practice of imposing these charges or their reasonableness or amount. Rather, plaintiffs allege that MCI's failure to disclose these billing practices, when coupled with the fact of a longstanding industry practice of not imposing such charges, amounts to a fraudulent misrepresentation of material fact sounding in tort as well as a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1983, ch. 121½, par. 261 *et seq.*). Plaintiffs seek damages and an accounting on behalf of themselves and others similarly situated.

■ A threshold issue of appellate jurisdiction and scope of review is raised by this interlocutory appeal. Case law has clearly established that a denial of a motion to stay is appealable as of right under Supreme Court Rule 307(a)(1). (*Metropolitan Sanitary District v. United States Steel Corp.* (1975), 30 Ill. App. 3d 360, 361, 332 N.E.2d 426.) However, in an interlocutory appeal, the scope of review is normally limited to an examination of whether or not the trial court abused its discretion in granting or refusing the requested interlocutory relief. (See *Peoples Gas Light & Coke Co. v. City of Chicago* (1983), 117 Ill. App. 3d 353, 358, 453 N.E.2d 740.) MCI contends that the issue of Federal preemption of these State law claims is properly before us even though the issue was not certified for review by the trial court pursuant to Supreme Court Rule 308. We agree, finding the resolution of this issue controlled by the result in *May Department Stores Co. v. Teamsters Union Local No. 743* (1976), 64 Ill. 2d

153, 355 N.E.2d 7. There, the trial court had issued a temporary injunction and, as in the present case, the defendant perfected an interlocutory appeal arguing that Federal law "preempted the authority of the circuit court *** to issue an injunction." (64 Ill. 2d 153, 157.) Our supreme court found that the question of preemption constituted a challenge to the jurisdiction of the trial court to enter the order appealed from and was therefore properly addressed on interlocutory review. Similarly, defendant's preemption argument in the present appeal challenges the trial court's jurisdiction to hear the causes pending before it and may therefore be properly considered on interlocutory appeal from a trial court order refusing to stay its own proceedings. (*Cf. Eastern v. Canty* (1979), 75 Ill. 2d 566, 389 N.E.2d 1160 (where the trial court's jurisdiction to proceed in a case after a petition for removal was filed in Federal district court was addressed on appeal).) Accordingly, we reject plaintiffs' contentions to the contrary and deny their motions to strike those portions of defendant's brief addressing the Federal preemption issue.

■ It is well established that there are three separate and independent grounds for Federal preemption of State law:

"[F]irst, when Congress, in enacting a federal statute, has expressed a clear intent to preempt state law [citation]; second, when it is clear, despite the absence of explicit pre-emptive language, that Congress has intended, by legislating comprehensively, to occupy an entire field of regulation and has thereby 'left no room for the States to supplement' federal law [citation]; and, finally, when compliance with both state and federal law is impossible [citation] or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " (*Capital Cities Cable, Inc. v. Crisp* (1984), 467 U.S. 691, 699, 81 L. Ed. 2d 580, 588-89, 104 S. Ct. 2694, 2700.)

MCI bases its preemption argument on the second ground, where Congress has intended, by legislating comprehensively, to occupy an entire field of regulation. However, little aid can be derived from the vague and illusory but often repeated formula that Congress "by occupying the field" has excluded from it all State legislation. Every act of Congress may occupy some field to a greater or lesser extent, but we must know the boundaries of that field before we can say it has precluded State regulation.

To that end, we must first examine the provisions of the Federal statute claiming to preempt State regulation. Congress enacted the Federal Communications Act of 1934 (47 U.S.C. sec. 151 *et seq.*

(1982)) "[f]or the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available *** a rapid efficient *** communication service with adequate facilities at reasonable charges." (47 U.S.C. sec. 151 (1982).) The Communications Act specifies that MCI's "charges, practices, classifications, and regulations for and in connection with [its] communication service, shall be just and reasonable." (47 U.S.C. sec. 201(b) (1982).) The Communications Act also establishes a procedure under which complaints arising under the Act may be brought before the Federal Communications Commission (FCC) and adjudicated or, in the alternative, an action may be filed in Federal district court. (47 U.S.C. secs. 206 through 209 (1982).) Moreover, the Act confers regulatory jurisdiction over tariffs on the FCC. (47 U.S.C. sec. 203 (1982).) Finally, section 414 of the Act provides that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 47 U.S.C. sec. 414 (1982).

Defendant cites *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.* (2d Cir. 1968), 391 F.2d 486, for the proposition that "the establishment of this broad scheme for the regulation of interstate service by communications carriers indicates an intent on the part of Congress to occupy the field to the exclusion of state law." (391 F.2d 468, 490.) However, it is clear that the Communications Act does not preempt every State law cause of action which can be brought against a carrier regulated by the FCC. (See *Ashley v. Southwestern Bell Telephone Co.* (W.D. Tex. 1976), 410 F. Supp. 1389.) For example, even MCI concedes that a party may sue it in State court for injuries negligently caused by the actions of one of its truck drivers. Moreover, the savings clause contained in section 414 of the Act would be rendered meaningless if all actions against carriers were preempted. The problem, then, is not resolved by citing cases which hold that Congress has "occupied the field." It is the precise contours of that field which must be determined.

We believe the facts surrounding *Ivy Broadcasting*, a case heavily relied upon by defendant, are particularly instructive. There, plaintiff brought a State law action against several telephone companies for negligence and breach of contract *in the rendition of interstate telephone service.* Specifically, plaintiff, a broadcasting network of six radio stations, alleged that it had engaged the defendant telephone companies to provide telephone hookups used in connection with the plaintiff's broadcasts of several football games and political conventions. The complaint further alleged grossly negligent and unreason-

ably delayed installation and operation of these special telephone lines, resulting in noisy broadcasts, interruptions and the transmission of wrong material. After thoroughly examining prior precedent to determine whether State law claims could be brought against the defendant communications carriers, the court held:

> "These cases lead us to conclude that questions concerning the duties, charges and liabilities of telegraph or telephone companies *with respect to interstate communications service* are to be governed solely by federal law and that the states are precluded from acting in this area. Where neither the Communications Act itself nor the tariffs filed pursuant to the Act deals with a particular question, the courts are to apply a uniform rule of federal common law." (Emphasis added.) (391 F.2d 486, 491.)

Thus, it is only a carrier's duties and liabilities with respect to the rendition of interstate communications service that are governed excusively by Federal law. The rationale advanced in *Ivy Broadcasting* was that, in order to implement the congressional purpose of uniform rates and services, nationwide standards for the actual rendition of telecommunications service were necessary and could only be achieved through the application of uniform Federal law to these disputes. 391 F.2d 486, 491.

The other cases cited by defendant support our conclusion above. In virtually every case, the plaintiff brought a State law action against a communications carrier complaining of some practice engaged in by the carrier with respect to the rendition of communications service. (*Western Union Telegraph Co. v. Boegli* (1920), 251 U.S. 315, 64 L. Ed. 281, 40 S. Ct. 167 (negligent failure to promptly deliver a telegram); *Postal Telegraph-Cable Co. v. Warren Godwin Lumber Co.* (1919), 251 U.S. 27, 64 L. Ed. 118, 40 S. Ct. 69 (negligence with respect to unrepeated messages); *O'Brien v. Western Union Telegraph Co.* (1st Cir. 1940), 113 F.2d 539 (transmission of a libelous message); *Komatz Construction, Inc. v. Western Union Telegraph Co.* (1971), 186 N.W.2d 691, *cert. denied* (1971), 404 U.S. 856, 30 L. Ed. 2d 98, 92 S. Ct. 102 (delayed transmission of a telegram).) In each instance, the court found that the application of State law to these types of disputes would result in carriers having different obligations to their customers in different States with respect to the rendition of communications service. In effect, allowing these State law claims would result in individual States controlling the manner in which communications service would be provided to the public. All the courts addressing this issue held that the need for uniform service standards

required rejection of these State law claims based upon Federal preemption.

■■ In the present cases, the question of Federal preemption is then reduced to an examination of whether or not plaintiffs' lawsuits seek to determine MCI's duties and liabilities with respect to rendition of interstate telecommunications service. Here, we do not believe plaintiffs' State law claims seek to regulate the manner in which defendant provides communications service to the public. Rather, they seek to regulate defendant's advertising practices in the solicitation of customers and ask that damages be awarded for past abuses. Nowhere in plaintiffs' complaints do they attack the lawfulness of MCI's billing practices *per se*. Indeed, such an attack on State law grounds would be preempted by Federal law under *Ivy Broadcasting* as an attempt to regulate a common carrier in the rendition of interstate communications service. Specifically conceding, for purposes of this litigation, that MCI may render service in the manner that it does, plaintiffs' complaints address MCI's practice of favorably comparing its rates to those of American Telephone & Telegraph (AT&T) through various advertising media, while failing to disclose that MCI customers are subject to charges which AT&T customers are not. The issues raised by the pleadings are ones of public disclosure and truthful advertising; they do not challenge MCI's right to provide communications service in the manner that it does.

MCI also cites several recent trial court decisions, holding that State false-advertising claims, such as the ones presented here, are preempted by Federal law. However, none of these decisions thoroughly reviewed the existing case law regarding Federal preemption in this area in an effort to define the precise boundaries of the field occupied by Congress. If they had, we believe they would have concluded, as we have, that the limits of Federal preemption extend only to those areas relating to the rendition of communications service by carriers. As previously discussed, Federal preemption in this area is predicated on the overriding need for uniform standards in the rendition of communications service in order to effect the congressional purpose of providing uniform and equal telecommunications service throughout the United States. (See *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.* (2d Cir. 1968), 391 F.2d 486, 491.) We do not find that there is a similar need for uniform advertising standards, nor do we believe Congress intended to impose such standards to the exclusion of State law requirements. The application of State advertising law to these disputes will not result in differing service requirements from State to State, nor will it result in each State reg-

ulating the manner in which communications service is rendered to the public. Rather, MCI and other communications carriers will merely be subject to certain State law restrictions with respect to their advertising practices. Thus, defendant will be put in the same position as any other company that chooses to advertise its products or services on a nationwide basis. Accordingly, we find that plaintiffs' claims based on fraud and deceptive advertising are not within the field occupied by Congress and are therefore not preempted by Federal legislation. Since the trial court clearly had jurisdiction to hear these cases, an alternative ground for reversal must be found if the trial court's ruling on the motion to stay is to be overturned.

■ MCI next contends that plaintiffs' claims should be stayed under the doctrine of primary jurisdiction because the FCC is the appropriate forum to consider the claims. We disagree.

The doctrine of primary jurisdiction is premised on the theory that, in order to properly integrate the functions of administrative agencies and the courts, consideration must be given to whether the relevant administrative agency should initially pass on the controversy. (*Mississippi Power & Light v. United Gas Pipeline Co.* (5th Cir. 1976), 532 F.2d 412, 417-19.) Referrals to administrative agencies are appropriate in the following circumstances: (1) if the agency could provide immunity to the defendant's actions; (2) where the issues involve technical questions within the particular competence of the administrative agency; or (3) where an administrative decision would promote uniformity in regulation throughout the country. *Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 48 L. Ed. 2d 643, 96 S. Ct. 1978.

The facts of the present cases closely parallel those found in *Nader*. There, the plaintiff got "bumped" from his plane flight because of overbooking, and he filed an action based on common law fraud and a Federal statutory action for the airline's failure to disclose the overbooking practice. The Supreme Court considered the issue of whether or not the trial court should stay its proceedings under the doctrine of primary jurisdiction pending an initial determination by the Civil Aeronautics Board on whether the practice was deceptive. The court rejected the primary jurisdiction argument, distinguishing between situations in which deferral to an agency "would secure uniformity and consistency in the regulation of business entrusted to a particular agency" or which "involve technical questions of fact uniquely within the expertise and experience of an agency" (426 U.S. 290, 304, 48 L. Ed. 2d 643, 655, 96 S. Ct. 1978, 1987), from the situation before it, finding:

"The action brought by petitioner does not turn on a determination of the reasonableness of a challenged practice—a determination that could be facilitated by an informed evaluation of the economics or technology of the regulated industry. The standards to be applied in an action for fraudulent misrepresentation *are within the conventional competence of the courts,* and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case." (Emphasis added.) *Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 305-06, 48 L. Ed. 2d 643, 656, 96 S. Ct. 1978, 1987-88.

■ Here, too, plaintiffs' actions do not turn on a determination of the reasonableness of a challenged practice relating to the delivery of telecommunications service, a matter within the peculiar expertise of the FCC. As in *Nader,* the standards to be applied to the instant cases are those relating to fraudulent misrepresentation and deceptive advertising and are well within the conventional competence of the courts. Also, the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of these cases. Accordingly, we find no abuse of discretion in the trial court's refusal to stay its proceedings on the grounds of primary jurisdiction.

■ Finally, MCI argues that the trial court should have stayed these proceedings pursuant to section 2—619(a)(3) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(3)) in deference to pending consolidated Federal actions "between the same parties for the same cause." We disagree.

Section 2—619(a)(3) provides that a defendant may move for dismissal or other appropriate relief on the ground "that there is another action pending between the same parties for the same cause." Defendant contends that the "same parties" requirement is met here because plaintiffs are potential members of a class in consolidated class actions currently pending in the United States District Court for the Eastern District of Michigan. (See *Anagnost v. Hammond Corp.* (1979), 73 Ill. App. 3d 667, 392 N.E.2d 355.) MCI also argues that the "same cause" requirement has been met because the relief requested here is on substantially the same state of facts as the relief requested in the Federal cases. (See *Skolnick v. Martin* (1964), 32 Ill. 2d 55, 203 N.E.2d 428, *cert. denied* (1965), 381 U.S. 926, 14 L. Ed. 2d 684, 85 S. Ct. 1562.) Assuming, *arguendo,* that the "same parties, same cause" requirements have been met here, we find no abuse of discretion in the trial court's denial of the motion to stay.

It is well established that the grant or denial of a motion to dis-

miss or stay under section 2—619(a)(3) is discretionary with the trial court and the court can, in the exercise of that discretion, deny such a motion and permit multiple actions between the same parties. (*A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 419 N.E.2d 23; *People ex rel. Fahner v. Climatemp, Inc.* (1981), 101 Ill. App. 3d 1077, 1084, 428 N.E.2d 1096.) Here, defendant would have the trial court defer to the actions pending in Federal district court where it was held that State law causes of action, like the ones presented in the instant cases, are preempted by Federal law. Since we believe the district court's decision is in error with respect to the preemption issue, we find no abuse of discretion in the trial court's refusing to stay its own proceedings in deference to the Federal district court proceedings.

In view of the foregoing, the order of the trial court denying MCI's motion to stay is affirmed and the cause is remanded for further proceedings.

Affirmed and remanded for further proceedings.

CAMPBELL and O'CONNOR, JJ., concur.