LAWRENCE P. KOCH, Plaintiff-Appellee, v. WILBUR SPALDING, Defendant-Appellant (Earnest Loffelhotz, a/k/a Earnie Loffelhotz, Defendant).

Fifth District   No. 5—87—0596

Opinion filed September 26, 1988.

HARRISON, P.J., dissenting.

Stephen W. Thomson and Charles C. Compton, both of Reed, Armstrong, Gorman & Coffey, of Edwardsville, for appellant.

John P. Geismann, of Highland, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

The present cause comes before this court as a permissive appeal filed by defendant, Wilbur Spalding, pursuant to Supreme Court Rule 308 (107 Ill. 2d R. 308) and concerns whether a release and waiver of liability executed by the plaintiff, Lawrence Koch, is a bar to a cause of action for negligence against the defendant. Plaintiff's underlying complaint consisted of two counts. The first count of plaintiff's complaint alleged that defendant Spalding directed plaintiff to perform his activities as a flagman at an automobile racing event in such a manner as to cause plaintiff bodily harm when he was struck by a racing vehicle and that his injuries were a proximate result of defendant's negligence. The second count of the complaint alleged that defendant Earnest Loffelhotz was also negligent when the vehicle that Loffelhotz was driving struck plaintiff. Defendant Spalding filed a motion to dismiss and/or a motion for summary judgment with regard to count one of plaintiff's complaint based upon the fact that plaintiff had signed a release and waiver of liability on the night of the occurrence prior to going into the restricted areas of the racetrack. The circuit court denied defendant Spalding's motion for summary judgment in a one-sentence order entered on February 27, 1986, in which the court gave no reasons for the denial. Subsequently, defendant Spalding filed a motion asking that the circuit court certify an order pursuant to Supreme Court Rule 308 so that defendant Spalding could seek an interlocutory appeal. On August 4, 1987, the circuit court filed a statement finding that its order entered on February 27, 1986, involved a question of law as to which there is a substantial ground for difference of opinion and the resolution of which would materially advance the ultimate termination of the litigation. This court granted the appeal. The action for negligence against defendant Loffelhotz remains pending below. Prior to considering the circuit court's certified question of law, a statement of the facts is necessary.

On May 28, 1982, plaintiff arrived at the Jacksonville racetrack located on the Morgan County Fairgrounds to act as a flagman for

the automobile races that were to be conducted that evening at the racetrack. He had come to the racetrack in a vehicle with five or six other persons and they had arrived late. According to plaintiff, he came to the pit shack at approximately 10 minutes to 8 o'clock. When he entered the pit shack, Tina Tyler, defendant Spalding's daughter, handed him a clipboard upon which there was a track release and waiver of liability form so that he might sign the form. Tyler did not explain the form to the plaintiff nor did plaintiff ask Tyler any questions about the form prior to his signing it. Plaintiff signed the release and left the pit shack to undertake his duties as a flagman.

Plaintiff's first duty that evening was to flag the "hot laps." At the Jacksonville racetrack there were two tracks, a quarter-mile track and a half-mile track. The quarter-mile track was inside the half-mile track. On May 28, 1982, the hot laps were being held on the area between the quarter-mile and the half-mile track. Plaintiff had run the first hot laps and was "shutting them down" when the last car on the track lost control and slid off the end of the quarter-mile track. When the vehicle lost control, it slid sideways. Plaintiff moved out of the path of the vehicle by going to the inside of the track, but the driver, Earnest Loffelhotz, had regained control of the car and had come onto the track where he struck plaintiff.

As a result of this accident, plaintiff suffered a broken leg, which required surgery and the insertion of a plate. The racetrack's insurance carrier paid for all of plaintiff's medical bills. However, plaintiff was unable to work for approximately 14 months and he lost almost $25,000 in wages. Plaintiff, in the first count of his complaint, alleged that defendant Spalding was negligent and sought in excess of $15,000 in damages. The second count of plaintiff's complaint alleged that defendant Loffelhotz was negligent and sought damages in excess of $15,000 under that count as well.

The circuit court's statement entered August 4, 1987, certified the following question of law to this court:

"Whether or not the release and waiver of liability executed by the Plaintiff is a bar to said Plaintiff's action against said Defendant where:

(a) Plaintiff has admitted executing said document;

(b) Plaintiff has indicated that said document was not covered up at the time of execution;

(c) Plaintiff has indicated that no person prevented him from reading said document at the time of execution;

(d) Plaintiff has indicated that defendant, [sic] Spalding did

not make any statements to him indicating the nature of said documents;

(e) Plaintiff has indicated that no one at the Morgan County Fairground or on behalf of defendant Spalding told him that Defendant's Deposition Exhibit Two (the original of which is attached and incorporated by reference) was anything other than a release or a release and waiver of liability and indemnity agreement;

(f) Plaintiff has indicated that, at the time of said execution, he was told nothing by the person at the entry gate of said facility, other than that signing said document was standard procedure."

The release and waiver of liability signed by plaintiff stated as follows:

"IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas, infield, burn out area, approach area, shut down area, and all walkways, concessions and other areas appurtenant to any area where any activity related to the event shall take place), or being permitted to compete, officiate, observe, work for, or for any purpose participate in any way in the event, EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs, and next of kin, acknowledges, agrees and represents that he has, or will immediately upon entering any of such restricted areas, and will continuously thereafter, inspect such restricted areas and all portions thereof which he enters and with which he comes in contact, and he does further warrant that his entry upon such restricted area or areas and his participation, if any, in the event constitutes an acknowledgement that he has inspected such restricted area and that he finds and accepts the same as being safe and reasonably suited for the purposes of his use, and he further agrees and warrants that if, at any time, he is in or about restricted areas and he feels anything to be unsafe, he will immediately advise the officials of such and will leave the restricted areas:

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization or any subdivision thereof, track operator, track owner, officials, car owners, drivers, pit crews, any persons in any restricted area, promoters, sponsors, advertisers, owners and lessees of premises used to conduct the

event and each of them, their officers and employees, all for the purposes herein referred to as 'releasees,' from all liability to the undersigned, his personal representatives, assigns, heirs, and next of kin for any and all loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area, and/or, competing, officiating in, observing, working for, or for any purpose participating in the event;

2. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted area or in any way competing, officiating, observing, or working for, or for any purpose participating in the event and whether caused by the negligence of the releasees or otherwise.

3. HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise while in or upon the restricted area and/or while competing, officiating, observing or working for or for any purpose participating in the event.

EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing release, waiver, and indemnity agreement is intended to be as broad and inclusive as is permitted by the law of the Province or State in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made."

Underneath these paragraphs there were numerous signature lines on each of which appeared in one-eighth-inch block letters "I have read this release." Additionally, at the top of the document was printed the heading "Release and Waiver of Liability and Indemnity Agreement."

Defendant Spalding contends that the above-mentioned release bars plaintiff's cause of action for negligence in this case. Under the facts certified by the circuit court's statement, we agree.

■■ Exculpatory agreements, such as the one signed by the plaintiff here, have been held not to be against public policy. (*Schlessman v. Henson* (1980), 83 Ill. 2d 82, 413 N.E.2d 1252.) An exculpatory agreement may be set aside if there is either fraud in the inducement or fraud in the execution of the agreement. (*Rudolph v. Sante Fe Park Enterprises, Inc.* (1984), 122 Ill. App. 3d 372, 461 N.E.2d 622.) Fraud in the execution occurs where the party was induced to sign the agreement not knowing it was a release but believing it to be another type of document, while fraud in the inducement is where the party is induced to enter into the release by false representations by the other party. (*Rudolph v. Sante Fe Park Enterprises, Inc.*, 122 Ill. App. 3d at 374, 461 N.E.2d at 624.) In this case, the facts asserted in the certified question of law do not establish that plaintiff was induced to execute the release and waiver of liability through fraud.

■ The record reveals that plaintiff had been involved in automobile racing for 10 years and that he had signed similar agreements prior to entering restricted areas of other racetracks. He admitted that he had not read the exculpatory agreement that he executed on May 28, 1982, but that he was not prevented from doing so prior to signing it. He stated that it was his understanding that by signing this document he was thereby covered by insurance if an accident should occur. However, he admitted that he knew that the word "release" meant that the racetrack was not liable should an accident occur. Further, the exculpatory language of the document was not covered so that he was unaware that it was a release that he was signing. Plaintiff stated that he "imagined" that the light at the time of his signing the document was adequate for reading it. The document itself was clearly captioned that it was a release and waiver of liability. Additionally, the signature lines of the document had the statement regarding reading the release on each line. These facts should have been sufficient to alert the plaintiff as to the nature of the document that he was signing. Plaintiff has not alleged sufficient facts to show that he was fraudulently induced to execute the release, and the language of the release clearly bars an action for negligence against a promoter, defendant Spalding's position at the racetrack.

■ Plaintiff argues that the release was invalid as there was inadequate consideration. While this is a factual matter that could be considered in a case such as this, this court cannot consider this argument as it is outside the scope of the question of law certified to this

court. Supreme Court Rule 308 (107 Ill. 2d R. 308) is an exception to the general rule that only final judgments are appealable; therefore, it should be exercised sparingly, and a court allowing such an appeal cannot expand on questions that were brought before it by the circuit court. (*Kondourajian v. Millers National Insurance Co.* (1987), 151 Ill. App. 3d 870, 503 N.E.2d 775; *State of Illinois ex rel. Skinner v. Lombard Co.* (1982), 106 Ill. App. 3d 307, 436 N.E.2d 566.) Thus, we will not consider the argument of whether the consideration for this agreement was sufficient.

■ Here, it appears that the circuit court's only basis for the denial of defendant Spalding's motion for summary judgment was that the circuit court erroneously found that the release did not bar the plaintiff's cause of action. Under the facts certified to this court, we find that the circuit court was in error and that its order denying defendant Spalding's motion for summary judgment must be vacated.

For the foregoing reasons, the order of the circuit court of Madison County denying defendant Spalding's motion for summary judgment is vacated and this cause is remanded for further proceedings in accordance with this opinion.

Judgment vacated and remanded.

CALVO, J., concurs.

PRESIDING JUSTICE HARRISON, dissenting:
I agree with the majority's holding that the "Release and Waiver of Liability and Indemnity Agreement" signed by plaintiff does not contravene public policy and that there was no fraud in the inducement or fraud in the execution of that agreement. Unlike the majority, however, I believe that this court can and must consider the additional question of whether the agreement was invalid for lack of adequate consideration.

Supreme Court Rule 308 (107 Ill. 2d R. 308), the provision pursuant to which this appeal has been brought, authorizes the appellate court, in its discretion, to allow an appeal from an interlocutory order not otherwise appealable when the trial court has made a written finding that "the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Under the rule, the trial court is to identify the question of law involved. This does not mean, however, that the appellate court must accept, without deviation, the trial court's formulation

of the legal questions at issue. Indeed, our court has recently held that appellate review may be made under Rule 308, in certain circumstances, even where the trial court has made no identification at all of the particular question of law involved. See *Cooper v. Bi-State Development Agency* (1987), 158 Ill. App. 3d 19, 22, 510 N.E.2d 1288, 1290.

That the trial court's formulation of the relevant legal questions is not controlling becomes evident when one considers that the basic purpose of a Rule 308 appeal is not to review the trial court's reasoning, but to test the propriety of the trial court's decision in granting or refusing the requested interlocutory relief (*cf. Kellerman v. MCI Telecommunications Corp.* (1985), 134 Ill. App. 3d 71, 73-74, 479 N.E.2d 1057, 1059, *aff'd* (1986), 112 Ill. 2d 428, 493 N.E.2d 1045, *cert. denied* (1986), 479 U.S. 949, 93 L. Ed. 2d 384, 107 S. Ct. 434), where immediate resolution of that issue may materially advance the ultimate termination of the litigation. If the trial court's formulation were binding, a situation might result where the trial court's order would have to be reversed on interlocutory appeal simply because its analysis of the case was defective even though the result it reached would ultimately have to be sustained as correct on appeal following entry of final judgment. In such a situation, the interlocutory appeal, rather than speeding resolution of the case, would have operated simply to protract it, and to have protracted it unnecessarily.

The approach adopted by the majority here exemplifies this problem. By focusing on the issues as framed by the circuit court, rather than examining the correctness of the order itself, the majority leaves unresolved the question of the adequacy of the consideration supporting the agreement signed by plaintiff. If, on remand, the circuit court were to find in favor of plaintiff on this question, then the majority's opinion as to the validity and effect of the agreement would be rendered meaningless. Meaningless opinions scarcely serve to "materially advance the ultimate termination of the litigation" as required by Rule 308 (107 Ill. 2d R. 308).

Rule 308 is derived from a Federal statute, 28 U.S.C.A. §1292(b) (West 1966). (See 107 Ill. 2d R. 308, Committee Comments, at 415.) In applying that statute, the Federal courts of appeal have avoided the foregoing problem. They have done so by recognizing that the nature and scope of review are not determined by the precise question certified by the trial court. Rather, under Federal law, the appellate court is free to consider "such questions as are basic to and underlie the order supporting the appeal." (*In re Oil Spill by Amoco Cadiz* (7th Cir. 1981), 659 F.2d 789, 793 n.5; see also *Merican, Inc. v. Caterpillar Tractor Co.* (3d Cir. 1983), 713 F.2d 958, 962 n.7 ("[o]n a §1292(b)

appeal we consider all grounds which might require a reversal of the order appealed from"), *cert. denied* (1984), 465 U.S. 1024, 79 L. Ed. 2d 682, 104 S. Ct. 1278.) In my view, the approach taken by the Federal courts is applicable to interlocutory appeals under Rule 308. Such an approach is necessary to prevent Rule 308 appeals from becoming a wasted exercise. In reviewing the circuit court's interlocutory order here denying summary judgment, I must therefore conclude that this court can and must consider the question of whether the agreement signed by plaintiff was supported by adequate consideration.

Once this question is reached, I would hold that adequate consideration was given in exchange for signing the agreement. Plaintiff was, after all, granted access to a restricted area at the racetrack which members of the general public were not authorized to enter. Because the agreement was supported by adequate consideration, because the agreement did not violate public policy, and because there was no fraud in the inducement or fraud in the execution of the agreement, I would not simply vacate the circuit court's order. I would reverse that order and remand the case with directions to enter summary judgment in favor of defendant Wilbur Spalding on count I of plaintiff's complaint.