Dale HUBER and Karen
Huber, Appellants,

v.

Dennis HOVEY; Nordic Speedway, Inc.;
Winneshiek County, Iowa, Fair Board;
Winneshiek County, Iowa, Agricultural
Association; and K & K Insurance
Group, Inc., Appellees.

No. 91–2000.

Supreme Court of Iowa.

May 19, 1993.

As Revised June 25, 1993.

Rehearing Denied June 16, 1993.

Bruce L. Walker and John E. Beasley of Phelan, Tucker, Boyle, Mullen, Bright & Walker, Iowa City, for appellants.

Marion L. Beatty of Miller, Pearson, Gloe, Burns, Beatty & Cowie, P.C., Decorah, for appellee Dennis Hovey.

Brendan T. Quann and Stephen C. Krumpe of O'Connor & Thomas, P.C., Dubuque, for appellees Nordic Speedway, Inc., Winneshiek County, Iowa, Fair Bd., and Winneshiek County, Iowa, Agricultural Ass'n.

Leo A. McCarthy and C.J. May III of Reynolds & Kenline, Dubuque, for appellee K & K Ins. Group, Inc.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

NEUMAN, Justice.

This case stems from an accident at the Winneshiek County Fairground racetrack, when a car's detached wheel struck and injured plaintiff Dale Huber. The district court granted all defendants summary judgment based on a release Dale signed. We affirm in part, reverse in part, and remand for further proceedings.

The record viewed in the light most favorable to the Hubers reveals the following facts. On September 2, 1989, Dale went to the racetrack to watch a friend race. He had been to races before, though not at this track. Dale saw that spectators were going to the grandstand, instead of the pit area, but he followed his friend to the pit area anyway. He paid the $10 admission fee, and was told to add his signature to a printed form. The form, captioned "Release and Waiver of Liability and Indemnity Agreement," provided:

IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA ... including ... pit areas ... EACH OF THE UNDERSIGNED....

1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, participants ... track operator, track owner, officials, car owners, drivers, pit crews, any persons in any restricted area ... owners and lessees of premises used to conduct the event ... for the purposes herein referred to as "releasees", from all liability to the undersigned, his personal representatives, assigns, heirs, and next of kin for any and all loss or damage, and any claim or demands therefor on account of injury ... whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area....

EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury....
THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY....

The words "I have read this release" were printed in red above each signature line.

Feeling pressured to keep the line behind him moving, Dale signed the form without reading it, and entered the pit area. He was standing about ten feet behind a protective "wheel fence," watching the race, when one of the cars lost a wheel and axle. The wheel tore through the fence, striking and injuring him. Dale sued for damages, and his wife Karen sued for loss of consortium.

The Hubers claimed several parties were negligent: Dennis Hovey, the car's driver; Nordic Speedway, Inc. (Nordic), the lessee of the track; and the Winneshiek County Fair Board and the Winneshiek County Agricultural Association, owner and operator of the racetrack property. The Hubers also claimed the track's insurance broker, K & K Insurance Group (K & K), was liable for negligent inspection of the wheel fence. The defendants jointly moved for summary judgment based on Dale's release. K & K also moved for summary judgment on the ground its inspection created no duty to the Hubers.

The district court granted summary judgment for all defendants, ruling that Dale's release barred both his claim for damages and Karen's claim for loss of consortium. The court declined to rule on whether K & K was entitled to summary judgment based on its affirmative defense that no duty flowed from its inspection.

The Hubers appeal, arguing preliminarily that racetracks have a nondelegable duty to insure their patrons' safety, and that the release Dale signed is ambiguous. They also contend on appeal that the release cannot bar (1) claims by spectators, (2) Karen's consortium claim, and (3) claims against K & K. K & K cross-appeals,

asserting that even if the release is no bar to the Hubers' claims, it owes no duty to the Hubers as a matter of law.

■ I. Our review is for correction of errors at law. Iowa R.App.P. 4. When reviewing a grant of summary judgment we ask whether the moving party has demonstrated the absence of any genuine issue of material fact and is entitled to judgment as a matter of law. *Suss v. Schammel,* 375 N.W.2d 252, 254 (Iowa 1985). The resisting party must set forth specific facts showing that a genuine factual issue exists. *Id.* Summary judgment is proper if the only issue is the legal consequences flowing from undisputed facts. *Sankey v. Richenberger,* 456 N.W.2d 206, 207 (Iowa 1990).

■ II. Dale asserts that racetracks have a nondelegable duty to ensure their patrons' safety, and that any attempt to insulate themselves from liability violates public policy. We find no merit in this argument. Although track owners and operators have a duty to provide safe premises, *see Gibson v. Shelby County Fair Ass'n,* 241 Iowa 1349, 1352, 44 N.W.2d 362, 364 (1950), we have repeatedly held that contracts exempting a party from its own negligence are enforceable, and are not contrary to public policy. *See, e.g., Bashford v. Slater,* 250 Iowa 857, 865, 96 N.W.2d 904, 909 (1959) (injured racetrack flagman's release enforceable).

■ Dale also seeks to avoid the effect of the release on the ground he did not read it. It is well settled that failure to read a contract before signing it will not invalidate the contract. *Small v. Ogden,* 259 Iowa 1126, 1132, 147 N.W.2d 18, 22 (1966). Absent fraud or mistake, ignorance of a written contract's contents will not negate its effect. *Id.,* 147 N.W.2d at 22.

■ III. The release Dale signed is a contract, and its enforcement is governed by principles of contract law. *Stetzel v. Dickenson,* 174 N.W.2d 438, 439 (Iowa 1970). Construing a contract—determining its legal effect—is a matter of law to be resolved by the court. *Farm Bureau Mut.*

*Ins. Co. v. Sandbulte,* 302 N.W.2d 104, 107 (Iowa 1981).

When construing contracts, courts are guided by the cardinal principle that the parties' intent controls, and, except in cases of ambiguity, that intent is determined by what the contract itself says. Iowa R.App.P. 14(f)(14).

Dale asserts the release is ambiguous. He claims it is unclear whether the parties intended to release claims by spectators, or just participants, and whether the parties contemplated the specific accident that occurred. By its terms, however, the release applies to anyone who, like Dale, enters a restricted area. It makes no distinction between spectators and participants. It clearly identifies the track's owner, operator, and lessee, as well as race participants, as releasees. The release covers personal injuries, including injuries caused by the releasee's own negligence.

The court of appeals has upheld a similar release against the same attack. *See Korsmo v. Waverly Ski Club,* 435 N.W.2d 746, 747–49 (Iowa App.1988) (release not ambiguous as to the types of injuries the parties intended to include). The district court correctly held the release is not ambiguous as to the particulars claimed by Dale.

IV. Dale next asserts the release is unenforceable against spectators as a matter of law. He argues releases are only valid when signed by a party knowledgeable and informed about the risks. While conceding that participants are presumed knowledgeable, and do not have a reasonable expectation of safety, he argues that spectators are unaware of the risks of pit areas, and cannot sign away their reasonable expectations without being informed of such risks.

We disagree. We believe there is no valid legal distinction between a release signed by a spectator permitted entry into a restricted area, and a release signed by a participant. Courts throughout the country have upheld such releases. *See, e.g., Valley Nat'l Bank v. National Ass'n for Stock Car Auto Racing, Inc.,* 153 Ariz. 374, 378, 736 P.2d 1186, 1190 (1987) (specta-

tors who signed release estopped from arguing release not meant to cover spectators, or that no meeting of minds occurred); *Barker v. Colorado Region–Sports Car Club of Am., Inc.,* 35 Colo.App. 73, 532 P.2d 372, 376 (1974) (spectator's release bars recovery for ordinary negligence); *Rudolph v. Santa Fe Park Enters., Inc.,* 122 Ill.App.3d 372, 374–75, 78 Ill.Dec. 38, 40, 461 N.E.2d 622, 624 (1984) (spectator injured when car drove off track; court enforced release, noting plaintiff's knowledge of risk only relevant if fraud in contract's execution is alleged); *Lee v. Allied Sports Assocs., Inc.,* 349 Mass. 544, 550, 209 N.E.2d 329, 332 (1965) (spectator who failed to read contract and who did not claim fraud was bound by release); *Church v. Seneca County Agric. Soc'y,* 41 A.D.2d 787, 788, 341 N.Y.S.2d 45, 47 (1973), *aff'd,* 34 N.Y.2d 571, 310 N.E.2d 541, 354 N.Y.S.2d 945 (1974) (spectator who signed release in order to enter racetrack's infield, where he was injured by an out-of-control car, cannot complain about release's effect).

Courts that have refused to enforce spectator releases rest their decision on the notion that some accidents are so unusual that a fact question is raised as to whether the plaintiff was aware of the risk. *See, e.g., Johnson v. Thruway Speedways, Inc.,* 63 A.D.2d 204, 205–06, 407 N.Y.S.2d 81, 83 (1978) (spectator's collision with maintenance vehicle, which was not traveling on the proper access road and whose driver was allegedly drunk and driving without lights, was a sufficiently unusual risk to preclude summary judgment based on spectator's release); *cf. Arnold v. Shawano County Agric. Soc'y,* 111 Wis.2d 203, 213, 330 N.W.2d 773, 778 (1983) (jury question exists as to scope of release when driver's injuries caused by chemicals used in rescue attempt).

Dale has not come forward with any proof that the risk he faced was unusual. To the contrary, the record contains evidence that several detached wheels had hit the fence in the past, although none had gone through. Absent any proof the risk was unusual or exceptional, Dale must be bound by his release.

We therefore hold the district court was correct in refusing to recognize a distinction between spectator releases and participant releases, and in granting summary judgment to Hovey, Nordic, and the fairground board and agricultural association on Dale's claims.

■ V. Next, we consider whether Dale's release also bars Karen's consortium claim. It is well established that consortium is the separate property right of each spouse; it is an independent, nonderivative claim. *Schwennen v. Abell,* 430 N.W.2d 98, 101 (Iowa 1988). We have explained:

> [Loss of consortium] is comprised of [the deprived spouse's] own physical, psychological and emotional pain and anguish which results when her husband is negligently injured to the extent that he is no longer capable of providing the love, affection, companionship, comfort or sexual relations concomitant with a normal married life.... From the vantage point of the negligent defendant, [the deprived spouse] is simply a foreseeable plaintiff to whom he owes a separate duty of care.

*Fuller v. Buhrow,* 292 N.W.2d 672, 675 (Iowa 1980) (quoting *Lantis v. Condon,* 95 Cal.App.3d 152, 157, 157 Cal.Rptr. 22, 24 (1979)).

In *Fuller* we held that under principles of contributory fault, an injured spouse's negligence does not bar a consortium claim brought by the deprived spouse. 292 N.W.2d at 676. In *Schwennen* we retained that rule, despite the interverning change in the law from a contributory to comparative fault standard, stating:

> The policy issues underlying the effect of the injured spouse's fault on the deprived spouse's loss of consortium claim are, we believe, substantially the same in either situation. The policy issue is a simple one. Why should innocent parties who have suffered loss have their right of recovery diminished as a result of the acts of another party whose fault is not imputed to them under established common-law or statutory rules?

430 N.W.2d at 101.

■ These same principles of autonomy apply to releases signed by only one spouse. One spouse's signature on a release is not imputed to the other spouse any more than is one spouse's negligent act. *See, e.g., Arnold,* 111 Wis.2d at 215, 330 N.W.2d at 779 (one spouse's release cannot bar the other, unless the other spouse also signs it); *see generally* Caroll J. Miller, Annotation, *Injured Party's Release of Tortfeasor as Barring Spouse's Action for Loss of Consortium,* 29 A.L.R.4th 1200 (1984).

The defendants rely on *Conradt v. Four Star Promotions, Inc.,* 45 Wash.App. 847, 728 P.2d 617 (1986). The *Conradt* court observed that an essential element of a consortium claim is a tort committed against the injured spouse. *Id.* at 853, 728 P.2d at 621. It then concluded that the injured spouse, by signing the release, "abandoned the right to complain if an accident occurred." *Id.,* 728 P.2d at 622. Without a duty owed to the injured party, the court reasoned, no actionable negligence exists. *Id.,* 728 P.2d at 622. Without an underlying tort, the court held the consortium claim fails. *Id.,* 728 P.2d at 622.

■ Contrary to the view held by the court in *Conradt,* we are not persuaded that the injured party's release erases the underlying tort. The tort was still committed, and it still caused harm to the nonreleasing spouse, whether the injured spouse's claim has been abandoned or not. As the *Lantis* court said, a separate duty is owed to each spouse. 95 Cal.App.3d at 157, 157 Cal.Rptr. at 24. Thus, a separate tort is committed when an actor's conduct deprives a spouse of the right to consortium. We therefore reverse the district court's grant of summary judgment to all defendants on Karen's claim.

■ VI. Unlike the other defendants, K & K is not expressly included in the release. The form contains a lengthy list of released parties, but it nowhere men-

tions either insurers or insurance brokers. Nevertheless the district court entered summary judgment in its favor along with the other defendants. Plaintiffs claim on appeal that this was erroneous.

K & K defends the court's ruling on two grounds. First, it argues the release should apply to all parties associated with the race. K & K's only authority to support this contention is *Arnold v. Shawano County Agricultural Society*, 106 Wis.2d 464, 317 N.W.2d 161 (Wis.App.1982), *aff'd*, 111 Wis.2d 203, 330 N.W.2d 773 (Wis.1983). However, *Arnold* only held that the county fair board and agricultural society, which owned and operated the racetrack, were sufficiently identified in a release referring generically to the track owner and operator. 106 Wis.2d at 470–71, 317 N.W.2d at 164. There is no suggestion in *Arnold* that a release should be construed so broadly as to encompass parties that are not identified in it in any way.

Second, K & K asserts it should be released because it is Nordic's "agent for its insurer." K & K argues that if Nordic is released, Nordic's insurer must also be released, because an insurer's liability derives from its insured. If the insured and the insurer are released, K & K argues, the insurance broker should likewise be released.

We need not address this argument because the Hubers' suit against K & K is not premised on K & K's status as the insurance broker. The Hubers allege that K & K is liable for its own negligent inspection of the racetrack, independent of any derivative liability it may have as an agent for the insurer. *Cf. Trainor v. Aztalan Cycle Club, Inc.*, 147 Wis.2d 107, 121–22, 432 N.W.2d 626, 632–33 (Wis.App.1988) (release of racetrack operator's liability also releases operator's insurer, whose liability can only be derived from negligent conduct of its insured). Because K & K was not included in the release, and the cause of action asserted by the Hubers against it does not rely on any agency relationship, the court should not have entered judgment in K & K's favor.

VII. K & K cross-appeals from the court's refusal to grant it summary judgment on the alternate ground that, notwithstanding the release, the Hubers cannot establish the existence of any actionable duty. The Hubers respond that K & K's conduct gives rise to a duty under *Thompson v. Bohlken*, 312 N.W.2d 501 (Iowa 1981), and section 324A of the Restatement (Second) of Torts.

In *Thompson* we adopted the Restatement's elements of the tort of negligent inspection. 312 N.W.2d at 507. Applied to this case, K & K would be liable if there were substantial evidence that it should have recognized its inspection was necessary for the protection of third persons, and either (1) the inspection increased the risk of harm, or (2) K & K undertook a duty owed by Nordic or the fairgrounds board to third parties, or (3) Huber was harmed because he or the racetrack's lessee, owner or operator relied on the inspection.

The record reveals that sometime in 1987, K & K's regional director inspected the track to determine whether it was still insurable. In a letter dated July 15, 1987, K & K informed the board that the "facility is in compliance with our underwriting standards at this time." A later change in the location of the pit area gives rise to Hubers' claim that an additional inspection was necessary to insure the safety of the fencing in place.

Whether K & K should have recognized its inspection was necessary for others' safety, whether the inspection increased the risk of harm, and whether others relied on K & K's involvement are disputed fact issues not resolvable on summary judgment. Because we cannot say as a matter of law that K & K owed no duty to the Hubers or the other defendants, the district court incorrectly granted summary judgment in its favor.

VIII. *Disposition.* We affirm the district court's grant of summary judgment in favor of Hovey, Nordic, and the fairgrounds board and agricultural association on Dale's claim, but reverse summary judgment for these defendants on Karen's con-

sortium claim. On Hubers' claim against K & K, we reverse the court's entry of summary judgment and remand for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**