NOTICE: Under Supreme Court Rule 367 a party has 21 days after the filing of the opinion to

request a rehearing. Also, opinions are subject to modification, correction or withdrawal at

anytime prior to issuance of the mandate by the Clerk of the Court. Therefore, because the

following slip opinion is being made available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The official copy of the following opinion

will be published by the Supreme Court's Reporter of Decisions in the Official Reports advance

sheets following final action by the Court.

                                    

                                    

                Docket No. 78678--Agenda 4--January 1996.

    In re LAWRENCE M. et al., Minors (The Department of Children and

                  Family Services et al., Appellants).

                                    

                      Opinion filed August 2, 1996.

     JUSTICE HARRISON delivered the opinion of the court:

     In these consolidated interlocutory appeals, we are asked to

decide whether the circuit court has the authority under section 2-

-10 of the Juvenile Court Act of 1987 (705 ILCS 405/2--10(2) (West

1994)) to enter orders requiring the Department of Children and

Family Services (DCFS) to provide and pay for in-patient drug

treatment services for mothers whose children were removed from

their custody due to their mothers' drug-related neglect of them.

On nine separate occasions in 1993 and 1994, DCFS appealed from the

entry of such orders by the circuit court of Cook County, juvenile

division (hereinafter juvenile court). The appellate court

consolidated the appeals, and affirmed the juvenile court orders in

all but two instances. 269 Ill. App. 3d 253.

     We allowed DCFS's petition for leave to appeal. 155 Ill. 2d R.

315. Separate appellees' briefs were filed by the office of the

Cook County public guardian, on behalf of the minor children, and

by the Cook County public defender, on behalf of the minors'

parents. "Appellees," as used in this opinion, refers,

interchangeably, to the minor children or to their parents. We

granted leave to the Austin Christian Law Center; the Children and

Family Justice Center of the Northwestern University School of Law;

and Illinois Action for Children, the Legal Assistance Foundation

of Chicago, and Joyce M. to file amicus curiae briefs in support of

appellees. 155 Ill. 2d R. 345.

     Initially we note that, in an interlocutory appeal, the scope

of review is normally limited to an examination of whether or not

the trial court abused its discretion in granting or refusing the

requested interlocutory relief. See Dixon Ass'n for Retarded

Citizens v. Thompson, 91 Ill. 2d 518, 524 (1982); Kellerman v. MCI

Telecommunications Corp., 134 Ill. App. 3d 71, 73 (1985), aff'd,

112 Ill. 2d 428 (1986). However, where the question presented is

one of law, a reviewing court determines it independently of the

trial court's judgment. Best Coin-Op, Inc. v. Old Willow Falls

Condominium Ass'n, 120 Ill. App. 3d 830 (1983). Moreover, to the

extent necessary, a reviewing court may consider substantive issues

in order to determine whether the trial court acted within its

authority. See Wilson v. Wilson, 217 Ill. App. 3d 844, 859 (1991).

In the instant case, DCFS asserts that the juvenile court acted

outside its authority in directing DCFS to pay for drug treatment

services to the parents of minors before the court because such

orders are barred by the doctrine of sovereign immunity, violate

the doctrine of separation of powers, and are not authorized by the

Juvenile Court Act of 1987 (705 ILCS 405/1--1 et seq. (West 1994)).

Therefore, to the extent necessary to resolve these substantive

issues, we are not limited to the traditional scope of review of an

interlocutory appeal. See Dixon, 91 Ill. 2d at 524-25.

     We first address the question of sovereign immunity in order

to determine whether the juvenile court had subject matter

jurisdiction. DCFS argues that the appellate court erred in holding

that the juvenile court orders did not violate the doctrine of

sovereign immunity, because each juvenile court order was directed

to DCFS, a State agency, to compel the expenditure of State funds.

We find little merit in this challenge. While sovereign immunity

dictates that the State can be sued only in the Court of Claims,

the determination of whether an action is in fact a suit against

the State turns upon an analysis of the issues involved and the

relief sought, rather than the formal designation of the parties.

Currie v. Lao, 148 Ill. 2d 151, 157-58 (1992); Healy v. Vaupel, 133

Ill. 2d 295, 308 (1990).

     In the present case, the juvenile court sought to compel DCFS,

through Gary T. Morgan, its guardianship administrator and the

appointed temporary custodian of each of the minors, or Carlton

Williams, another DCFS administrator, to fulfill duties it believed

were mandated by the Juvenile Court Act. A suit against State

officials which seeks to compel them to perform their duty is not

held to be a suit against the State even though the duty to be

performed arises under a certain statute, and the payment of State

funds may be compelled. See In re V.H., 197 Ill. App. 3d 52, 58

(1990); Franks v. Tucker, 132 Ill. App. 3d 455, 461 (1985).

Therefore, the appellate court did not err in finding that the

juvenile court orders at issue here were not barred by the doctrine

of sovereign immunity, where the orders essentially directed DCFS

administrators to provide mandated services. 269 Ill. App. 3d at

256-57.

     DCFS also contends that the juvenile court orders violated the

doctrine of separation of powers because the juvenile court usurped

the authority of DCFS to determine the proper services to be

provided for the families involved herein. The separation of powers

clause provides: "The legislative, executive and judicial branches

are separate. No branch shall exercise powers properly belonging to

another." Ill. Const. 1970, art. II, §1. However, the doctrine of

separation of powers was not designed to achieve a complete divorce

among the three branches of government, nor does it require

governmental powers to be divided into rigid, mutually exclusive

compartments. In re J.J., 142 Ill. 2d 1, 7 (1991). There are

instances in which the separate spheres of governmental authority

overlap (In re J.J., 142 Ill. 2d at 7), and this is an excellent

example of one of them.

     The legislature has designated DCFS as the State agency

authorized to provide social services to children and their

families which are directed toward, inter alia, "preventing or

remedying, or assisting in the solution of problems which may

result in, the neglect, abuse, exploitation or delinquency of

children." 20 ILCS 505/1, 5(a)(3)(B) (West 1994). However, the

legislature has also authorized the juvenile court, in dealing with

a minor it has probable cause to believe is abused, neglected or

dependent, to enter orders for the "provision of services to the

minor or his family to ameliorate the causes contributing to the

finding of probable cause." 705 ILCS 405/2--10(2) (West 1994).

Therefore, the "evil" of the court's usurping the executive

discretion of DCFS in providing child welfare services is absent in

abuse and neglect proceedings, where both DCFS and the court share

the duty of protecting the child's best interest and the goal of

preserving families whenever possible. See In re J.J., 142 Ill. 2d

at 8-9; see also 325 ILCS 5/2; 20 ILCS 505/5(a)(3)(C), (a)(3)(D);

705 ILCS 405/2--10(2), (9)(d) (West 1994). Indeed, section 8.4 of

the Abused and Neglected Child Reporting Act (325 ILCS 5/8.4 (West

1994)) requires that DCFS "provide or arrange for and monitor ***

rehabilitative services for children and their families on a

voluntary basis OR UNDER A FINAL OR INTERMEDIATE ORDER OF THE

COURT." (Emphasis added.) Thus, where it is clear that the

legislature contemplated interplay between DCFS and the juvenile

court in deciding the appropriate social services for neglected and

abused children and their families, the juvenile court orders

involved herein did not violate the doctrine of separation of

powers.

     Having disposed of these preliminary matters, the central

issue presented for our resolution remains: whether the juvenile

court, pursuant to the Juvenile Court Act, may order DCFS to

provided and pay for in-patient drug treatment services for mothers

whose children are removed from their custody due to the mothers'

drug-related neglect of them. DCFS argues that the juvenile court

has no authority to exercise a power not specifically granted to it

by the Juvenile Court Act, and that because there is no statutory

authority requiring that DCFS provide and pay for drug treatment

services for the parents of minors, the juvenile court lacked

subject matter jurisdiction to enter the orders in question.

However, circuit court jurisdiction is conferred solely by the

constitution, except in the limited area of administrative review.

See Ill. Const. 1970, art. VI, §9; In re M.M., 156 Ill. 2d 53, 65

(1993). Therefore, contrary to DCFS's assertion, circuit courts no

longer seek statutory justification for the exercise of

jurisdiction. See In re M.M., 156 Ill. 2d at 75 (Miller, C.J.,

concurring). Further, while it is true that the constitutional

source of a circuit court's jurisdiction does not carry with it a

license to act in ways inconsistent with controlling statutory law

(see In re M.M., 156 Ill. 2d at 75 (Miller, C.J., concurring)), we

need not address that problem here because we believe the

applicable statutory provisions support the juvenile court's

orders.

     It is the purpose and policy of the Juvenile Court Act to

preserve and strengthen the minor's family ties, removing him from

his family only when his welfare or safety or the protection of the

public cannot be adequately safeguarded. 705 ILCS 405/1--2(1) (West

1994). More particularly, section 2--10 of the Juvenile Court Act

(705 ILCS 405/2--10 (West 1994)), which pertains to temporary

custody proceedings following the filing of a petition alleging

that a minor is abused, neglected or dependent, is part of a

comprehensive statutory scheme designed to, in a just and speedy

manner, "determine families in need, reunify families where

appropriate and, if reunification is inappropriate, find other

permanent homes for children." 705 ILCS 405/2--14(a) (West 1994).

Section 2--10(2) of the Act provides, inter alia:

          "If the minor is ordered placed in a shelter care

          facility of the Department of Children and Family

          Services or a licensed child welfare agency, the court

          shall, upon request of the appropriate Department or

          other agency, appoint the [DCFS] Guardianship

          Administrator or other appropriate agency executive

          temporary custodian of the minor and THE COURT MAY ENTER

          SUCH OTHER ORDERS RELATED TO THE TEMPORARY CUSTODY AS IT

          DEEMS FIT AND PROPER, INCLUDING THE PROVISION OF SERVICES

          TO THE MINOR OR HIS FAMILY TO AMELIORATE THE CAUSES

          CONTRIBUTING TO THE FINDING of probable cause or to the

          finding of the existence of immediate and urgent

          necessity." (Emphasis added.) 705 ILCS 405/2--10(2) (West

          1994).

     Appellees argue that the plain language of this section grants

the juvenile court the authority to enter orders for the provision

of drug treatment services for parents whose addiction has caused

or contributed to the minor's placement in shelter care. We agree,

not only because the Juvenile Court Act is to be liberally

construed to carry out its purpose and policies (705 ILCS 405/1--

2(4) (West 1994)), but more importantly, because other statutory

provisions make it clear that drug treatment for parents of

neglected and abused children was among the services the

legislature intended DCFS to provide.

     The parties agree that the Juvenile Court Act, the Abused and

Neglected Child Reporting Act (325 ILCS 5/1 et seq. (West 1994)),

the Children and Family Services Act (20 ILCS 505/1 et seq. (West

1994)), and, to some extent, the Illinois Alcoholism and Other Drug

Dependency Act (20 ILCS 301/1--1 et seq. (West 1994)) must be

construed in concert to determine the powers and responsibilities

of DCFS in cases involving abuse or neglect resulting from parental

drug abuse. Under the Abused and Neglected Child Reporting Act,

once there is credible evidence that a child is abused or

neglected, DCFS must promptly notify the child and his family of

DCFS's responsibility to offer and provide "family preservation

services." 325 ILCS 5/8.2 (West 1994). Family preservation services

are defined in that same section as "all services to prevent the

placement of children in substitute care, to reunite them with

their families if so placed and if reunification is an appropriate

goal, or to maintain an adoptive placement." 325 ILCS 5/8.2 (West

1994). Such services include, but are not limited to, case

management services, homemaker, parent education, day care, medical

assistance, and counseling, which specifically includes drug and

alcohol abuse counseling. 325 ILCS 5/8.2 (West 1994).

     The Children and Family Services Act states that DCFS shall

have the power to provide direct child welfare services. 20 ILCS

505/5 (West 1994). Section 5(a)(3) provides, in part:

               " `Child welfare services' means public social

          services which are directed toward the accomplishment of

          the following purposes:

                    * * *

                    (B) preventing or remedying, or assisting in

               the solution of problems which may result in, the

               neglect, abuse, exploitation or delinquency of

               children;

                    (C) preventing the unnecessary separation of

               children from their families by identifying family

               problems, assisting families in resolving their

               problems, and preventing the breakup of the family

               where the prevention of child removal is desirable

               and possible;

                    (D) restoring to their families children who

               have been removed, by the provision of services to

               the child and the families." 20 ILCS 505/5(a)(3)(B)

               through (a)(3)(D) (West 1994).

     Section 5 of the Children and Family Services Act further

states: "Service programs shall be available throughout the State

and shall include but not be limited to the following services: (1)

case management; (2) homemakers; (3) COUNSELING; (4) parent

education; (5) day care; and (6) emergency assistance and

advocacy." (Emphasis added.) 20 ILCS 505/5(i) (West 1994). Indeed,

we find it worthy of note that section 5, which addresses in detail

DCFS's provision of direct child welfare services, places no

limitations on the expenditure of public funds save for the purpose

of performing abortions. See 20 ILCS 505/5(b) (West 1994). Rather,

section 5(l) mandates that DCFS "accept for family preservation

services, and *** provide appropriate services to, any family whose

child has been placed in substitute care *** or any persons whose

child or children are at risk of being placed outside their home"

because of a report of suspected child abuse or neglect. 20 ILCS

505/5(l) (West 1994).

     Additionally, section 34.4 of the Children and Family Services

Act empowers DCFS "[t]o enter into referral agreements, on its own

behalf and on behalf of agencies funded by [DCFS], with licensed

alcohol and drug abuse treatment programs for the referral and

TREATMENT of clients with alcohol and drug abuse problems."

(Emphasis added.) 20 ILCS 505/34.4 (West 1994). While this language

seems to indicate that DCFS may enter into agreements to fund

substance abuse treatment of clients, DCFS argues that it is

required by statute only to recommend and refer adult clients to

other State agencies to obtain treatment. It is true that several

statutory provisions allude to DCFS's duty to recommend drug or

alcohol abuse treatment and to include any treatment

recommendations in the family's case or service plan. See 20 ILCS

505/34.5; 325 ILCS 5/8.2 (West 1994). However, these provisions do

not abrogate DCFS's responsibility to provide and pay for drug and

alcohol treatment services for parents who need these services to

preserve their families. Indeed, we have found no statutory

provisions which require DCFS to refer parents to other State

agencies to obtain services; rather, only sections requiring DCFS

to refer individuals to a licensed program or facility. See 20 ILCS

505/34.5; 325 ILCS 5/8.2 (West 1994).

     DCFS also argues that under the Alcoholism and Other Drug

Abuse and Dependency Act, the Department of Alcoholism and

Substance Abuse (DASA) is the State agency responsible for paying

for drug and alcohol treatment. However, we agree with the

appellate court that there is nothing to indicate that DASA is the

exclusive State agency to provide substance abuse treatment.

"Rather, DASA was designed to work with other State agencies in

providing substance abuse treatment." 269 Ill. App. 3d at 261; see

20 ILCS 301/5--10(a)(4)(I), (a)(14) (West 1994). The Alcoholism and

Other Drug Abuse and Dependency Act provides, in its legislative

declaration, that "[t]he human, social, and economic benefits of

preventing alcohol and other drug abuse and dependence are great,

and IT IS IMPERATIVE THAT THERE BE INTERAGENCY COOPERATION IN THE

PLANNING AND DELIVERY OF ALCOHOL AND OTHER DRUG ABUSE prevention,

intervention, and TREATMENT EFFORTS IN ILLINOIS." (Emphasis added.)

20 ILCS 301/1--5 (West 1994).

     Indeed, section 5--10(a)(4) of the Alcoholism and Other Drug

Abuse and Dependency Act specifies that DASA is to work with DCFS

to:

               "(D) Assist in the placement of child abuse or

          neglect perpetrators (identified by the Illinois

          Department of Children and Family Services) who have been

          determined to be in need of alcohol or other drug abuse

          services pursuant to Section 8.2 of the Abused and

          Neglected Child Reporting Act.

               (E) Cooperate with and assist the Illinois

          Department of Children and Family Services in carrying

          out its mandates to:

               (i) identify alcohol and other drug abuse issues

          among its clients and their families; and

               (ii) develop programs and services to deal with such

          problems.

          These programs and services may include, but shall not be

          limited to, programs to prevent the abuse of alcohol or

          other drugs by DCFS clients and their families,

          rehabilitation services, identifying child care needs

          within the array of alcohol and other drug abuse

          services, and assistance with other issues as required."

          20 ILCS 301/5--10(a)(4)(D), (a)(4)(E) (West 1994).

Therefore, contrary to DCFS's claim, the Alcoholism and Other Drug

Abuse and Dependency Act, like the Juvenile Court Act, Abused and

Neglected Child Reporting Act and the Children and Family Services

Act, demonstrates the intent of our legislature to mandate DCFS's

provision of drug treatment services to parents involved in

juvenile abuse and neglect proceedings as a result of their drug-

related neglect of their children.

     Finally, DCFS argues that the appellate court's affirmance of

the juvenile court orders was premised on the false assumptions

that the orders were essential to the reunification of the families

in question, entered after DCFS had been afforded adequate time to

develop a treatment plan for the families, and interim in nature.

We first note that our review of the record supports the appellate

court's finding that, in each of the instant cases, DCFS did not

dispute the need for in-patient drug treatment, but simply claimed

that it should not be required to pay for such treatment. 269 Ill.

App. 3d at 258. Additionally, in all of the cases save one, where

the record is unclear, the drug treatment was either recommended by

DCFS itself or by a substance abuse professional. Therefore, we see

no error in the appellate court's finding that the orders were

essential to the reunification of the families in question.

     Next, we address DCFS's contention that the juvenile court's

entry of orders for services prior to the filing of a case plan

pursuant to section 2--10.1 of the Juvenile Court Act (705 ILCS

405/2--10.1 (West 1994)) is premature. DCFS claims that there was

no time for it to investigate whether an in-patient drug treatment

program would be appropriate for the mothers in question. However,

a full review of the relevant statutes demonstrates that, in most

cases, DCFS should have a treatment plan in development prior to

the temporary custody hearing. Section 2--10(2) of the Juvenile

Court Act provides that, at the time of the temporary custody

hearing:

          "The court shall require documentation from [DCFS] as to

          the reasonable efforts that were made to prevent or

          eliminate the necessity of removal of the minor from his

          or her home or the reasons why no efforts reasonably

          could be made to prevent or eliminate the necessity of

          removal." 705 ILCS 405/2--10(2) (West 1994).

This language shows that DCFS must come to court with any and all

documentation of its service provision efforts.

     In addition, both the Abused and Neglected Child Reporting Act

and the Children and Family Services Act address DCFS's

responsibility to create case plans and provide services to

children and families while under investigation by DCFS and before

juvenile court involvement. The Abused and Neglected Child

Reporting Act states that when DCFS's Child Protective Unit

determines there is credible evidence to believe that the child is

abused or neglected, DCFS "shall assess the family's need for

services, and, as necessary, develop, with the family, an

appropriate service plan for the family's voluntary acceptance or

refusal." 325 ILCS 5/8.2 (West 1994); see also 20 ILCS 505/34.5

(West 1994). Perhaps most significant is the provision in section

5(l) of the Children and Family Services Act that:

          "[t]he child and his family shall be eligible for

          services as soon as the report [of suspected child abuse

          or neglect] is determined to be `indicated'. The

          Department may offer services to any child or family with

          respect to whom a report of suspected child abuse or

          neglect has been filed, PRIOR to concluding its

          investigation under Section 7.12 of the Abused and

          Neglected Child Reporting Act." (Emphasis added.) 20 ILCS

          505/5(l) (West 1994).

     Additionally, a review of the record shows that DCFS did not

argue in the juvenile court that entry of the orders was premature

because it did not yet have the opportunity to complete a case

plan. Rather, the record supports the appellate court's finding

that, in each of the cases, DCFS had sufficient time prior to the

entry of the order to determine the family's need for drug

treatment services.

     We also believe that the appellate court correctly found that

the juvenile court did not impose a long-term obligation on DCFS.

The record shows that the juvenile court was interested in giving

these mothers an opportunity to reunite their families through

successful completion of an in-patient drug treatment program and

that the court "recognized the need to immediately place the

mothers in *** treatment programs since at the time the children

were removed from the home, the mothers were most motivated to

cooperate in order to get their children back." 269 Ill. App. 3d at

258. The orders at issue required DCFS to place the mothers in

appropriate treatment facilities and to guarantee payment to those

facilities. The orders did not prohibit DCFS from seeking funds

from DASA or other sources to pay for the mothers' treatment. See

20 ILCS 301/5--10(a)(14) (West 1994); see also 20 ILCS 505/34.6;

325 ILCS 5/8.2(e),(f) (West 1994). Thus, contrary to DCFS's

contention, the record does indicate that the juvenile court viewed

these orders as interim in nature.

     Accordingly, we hold that the juvenile court is statutorily

authorized to order DCFS to provide and pay for in-patient drug

treatment services under the circumstances present herein, and that

the orders entered were supported by the record and therefore not

an abuse of the court's discretion.

     For the foregoing reasons, the judgment of the appellate court

is affirmed.

Affirmed.

                                                                         

     JUSTICE MILLER, dissenting:

     I do not agree with the majority's determination that the

Department of Children and Family Services (DCFS or the Department)

may be required to pay the costs of the in-patient alcoholism and

drug abuse treatment ordered in these consolidated cases. I believe

that the present orders exceed the Department's statutorily defined

duties, and therefore I dissent.

     I agree with the Department that its responsibility in these

circumstances is more limited than the majority envisions. An

examination of the relevant statutes demonstrates that the

Department is to make referrals for treatment of alcoholism and

drug abuse, but there is no provision that expressly authorizes or

requires the Department to pay the costs of in-patient treatment

for those conditions. Courts customarily defer to an administrative

agency's interpretation of ambiguous statutory language that the

agency is charged with enforcing. Reed v. Kusper, 154 Ill. 2d 77,

86 (1992); City of Decatur v. American Federation of State, County,

& Municipal Employees, Local 268, 122 Ill. 2d 353, 361 (1988);

Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n, 95

Ill. 2d 142, 152-53 (1983). I would apply that principle here and

would hold that the Department cannot be compelled to pay the costs

of in-patient alcoholism and drug abuse treatment programs for

parents of minors who come within the Department's jurisdiction.

     A general statement of the trial court's powers in cases such

as these is found in section 2--10(2) of the Juvenile Court Act of

1987, which says:

          "If the minor is ordered placed in a shelter care

          facility of the Department of Children and Family

          Services or a licensed child welfare agency, the court

          shall, upon request of the appropriate Department or

          other agency, appoint the Department of Children and

          Family Services Guardianship Administrator or other

          appropriate agency executive temporary custodian of the

          minor and the court may enter such other orders related

          to the temporary custody as it deems fit and proper,

          including the provision of services to the minor or his

          family to ameliorate the causes contributing to the

          finding of probable cause or to the finding of the

          existence of immediate and urgent necessity." 705 ILCS

          405/2--10(2) (West 1994).

     The language of section 2--10(2) authorizing the trial court

to enter orders designed to "ameliorate the causes" giving rise to

judicial intervention cannot be read so broadly that it produces an

absurd result. For example, I do not believe that the Department

could be compelled to pay the costs of a parent's vocational

training, even if the trial court believed that employment in a

particular calling would ameliorate the problems that resulted in

the Department's involvement in the case. Rather, the broad

language of section 2--10(2) must be read in conjunction with the

other statutes pertaining to the Department's powers and duties.

Unlike the majority, I do not discern in section 2--10(2) or in the

related statutes a legislative intent to make the Department

responsible for the costs of in-patient alcoholism and drug abuse

treatment programs.

     Section 5(g) of the Children and Family Services Act provides:

               "Rules and regulations established by the Department

          shall include provisions for training Department staff

          and the staff of Department grantees, through contracts

          with other agencies or resources, in alcohol and drug

          abuse screening techniques to identify children and

          adults who should be referred to an alcohol and drug

          abuse treatment program for professional evaluation." 20

          ILCS 505/5(g) (West 1994).

In addition, section 34.4 of the Children and Family Services Act

authorizes the Department "[t]o enter into referral agreements, on

its own behalf and on behalf of agencies funded by the Department,

with licensed alcohol and drug abuse treatment programs for the

referral and treatment of clients with alcohol and drug abuse

problems." 20 ILCS 505/34.4 (West 1994).

     Regarding the drug and alcohol problems of clients' family

members, section 34.5 of the Children and Family Services Act

directs the Department:

               "To make such inquiry as may be appropriate, in any

          intake or investigation which the Department is required

          or authorized to conduct, to determine whether drug or

          alcohol abuse is a factor contributing to the problem

          necessitating the Department's involvement, and, when

          appropriate, to refer a person to a licensed alcohol or

          drug treatment program, and to include any treatment

          recommendations in the person's case plan." 20 ILCS

          505/34.5 (West 1994).

"Where appropriate, the case plan shall include recommendations

concerning alcohol or drug abuse evaluation." 20 ILCS 505/6a(a)

(West 1994).

     The legislature has placed restrictions on the facilities to

which the Department of Children and Family Services may make

referrals for alcoholism and drug abuse treatment. Discussing the

Department's duty to make referrals, section 8.2 of the Abused and

Neglected Child Reporting Act provides, in pertinent part, "In any

case where there is evidence that the perpetrator of the abuse or

neglect is an addict or alcoholic as defined in the Alcoholism and

Other Drug Abuse and Dependency Act, the Department, when making

referrals for drug or alcohol abuse services, shall make such

referrals to facilities licensed by the Department of Alcoholism

and Substance Abuse or the Department of Public Health." 325 ILCS

5/8.2 (West 1994).

     Noticeably absent from all of these provisions is any

indication that the Department may be required to pay the costs of

in-patient treatment for parents' alcoholism or drug abuse. The

preceding measures must be contrasted with the provisions of the

Alcoholism and Other Drug Abuse and Dependency Act, which sets

forth the powers and duties of the Department of Alcoholism and

Substance Abuse. In doing so, the Alcoholism and Other Drug Abuse

and Dependency Act clearly indicates the responsibility of the

Department of Alcoholism and Substance Abuse to establish and fund

treatment programs. The legislature has denominated that department

to be the exclusive state agency to accept, receive, and expend

funds for substance abuse services. 20 ILCS 301/5--10(a)(2) (West

1994). While the Department of Alcoholism and Substance Abuse is to

assist DCFS in identifying substance abuse problems among the

latter agency's clients and in developing programs and services for

those problems, none of the enumerated activities involve the

providing of in-patient treatment programs. 20 ILCS 301/5--

10(a)(4)(D), (a)(4)(E) (West 1994). Indeed, the majority's result

in this case undermines the role of the Department of Alcoholism

and Substance Abuse as the primary state agency charged with the

prevention and treatment of alcohol and drug problems among

residents of Illinois.

     In sum, there is no clear expression of legislative intent

that the Department should be responsible for the costs ordered by

the trial judges in the cases consolidated here. Given the lack of

a clear expression of legislative intent on this important matter,

I would defer to the Department's own construction of its governing

statutes and conclude that the Department may not be ordered to pay

the costs of in-patient alcoholism and drug abuse treatment for

parents of minors who are within the Department's jurisdiction. No

one disputes the terrible toll that substance abuse problems can

take on minors and their families. I believe, however, that the

determination whether to pay the costs of providing in-patient

treatment for those conditions is committed to the legislature

rather than to the judiciary. In the absence of a directive from

the legislature, we should not add further financial obligations to

the Department's already lengthy list of duties and

responsibilities. Because I do not believe that the orders here

were authorized by statute, I do not address the separate question

whether the Department was required to have developed service plans

by the time the court hearings were held in these cases.

     JUSTICES HEIPLE and McMORROW join in this dissent.

     JUSTICE HEIPLE, also dissenting:

     In seven unrelated temporary custody hearings, the trial court

ordered the Department of Children and Family Services (DCFS) to

provide and pay for in-patient drug treatment services for mothers

whose children were removed from their custody due to their

mothers' drug-related neglect of them. The majority today approves

this practice. In fact, the juvenile court's actions were premature

and an abuse of discretion. Accordingly, I dissent.

     A temporary custody hearing must be held within 48 hours after

authorities, acting upon the reasonable belief that a minor has

been abused or neglected, have taken that minor into custody. See

705 ILCS 405/2--3 through 2--10 (West 1994). During that 48-hour

period, the DCFS's main focus is--and should be--the immediate

needs of the minor for protection, crisis treatment, and shelter

care. However, the majority finds that the DCFS should also have a

treatment plan, including in-patient drug treatment for the minors'

parents where necessary, "in development prior to the temporary

custody hearing." Slip op. at 9. Thus, in addition to securing the

well-being of the child taken into custody, finding that child

appropriate shelter, and preparing for the temporary custody

hearing itself within 48 hours, the majority holds that DCFS is

also required to conclude whether an in-patient drug treatment

program is appropriate for the parents in question, to investigate

what type of program would be beneficial, and to ascertain whether

such programs are available.

     The majority finds support for the burden it places upon the

agency in section 2--10(2) of the Juvenile Court Act, which

cautions that, at the time of the temporary custody hearing, the

court shall require documentation as to the "reasonable efforts"

that were made to prevent or eliminate the necessity of removal of

the minor from his or her home. 705 ILCS 405/2--10(2) (West 1994).

In the lengthy context of section 2--10(2) of the Act, which

governs temporary custody hearings, I do not read a few isolated

references to "reasonable efforts" to mean that the DCFS has 48

hours to place a minor's parent with an in-patient drug treatment

program. As a practical matter, this 48-hour placement cannot be

met. I understand the Act to require only that a court cannot order

a child into temporary custody without a good-faith showing by DCFS

that the placement is necessary to the immediate well-being of the

child at the time of the hearing.

     Moreover, the majority wholly ignores those provisions of the

Act which govern the DCFS's obligation to utilize its expertise in

determining what type of comprehensive service plan would best

serve the families before it. Section 2--10.1 of the Act provides

that once the child is temporarily removed, DCFS is required to

develop a case plan for the family within 45 days. 705 ILCS 405/2--

10.1 (West 1994). This case plan must utilize family preservation

services. 20 ILCS 505/6a (West 1994). Indeed, section 5--8.2 of the

Abused and Neglected Child Reporting Act states:

               "The Department shall promptly notify children and

          families of the Department's responsibility to offer and

          provide family preservation services as identified in the

          service plan. Such plans may include but are not limited

          to: case management services; homemakers; counseling;

          parent education; day care; emergency assistance and

          advocacy assessments; respite care; in-home health care;

          transportation to obtain any of the above services; and

          medical assistance." 325 ILCS 5/8.2 (West 1994).

Thus, it is the responsibility of the DCFS to conduct an

investigation into the needs of the families during this 45-day

period following the minor's temporary removal and to decide what

types of services would be appropriate to facilitate reunification.

Given these provisions, this court should not countenance the

juvenile court's hasty fiat--without the benefit of any

professional evaluation or recommendation on the part of the agency

charged with reunification efforts--that the DCFS provide and pay

for in-patient drug counseling services for these mothers.

     Finally, despite the majority's careful effort to cull

supportive policy language from lengthy and interrelated statutes

to buttress its analysis, I am not persuaded that the Juvenile

Court Act, along with the Abused and Neglected Child Reporting Act,

the Children and Family Services Act and the Illinois Alcoholism

and Other Drug Dependency Act combine to make it "clear" that drug

treatment for parents of neglected and abused children is among the

services the legislatures intended the DCFS to provide. Slip op. at

5. There are numerous statutory provisions in these Acts which

direct DCFS to identify and refer those children and/or adults with

drug or alcohol problems to other state agencies for evaluation and

treatment. See 325 ILCS 5/8.2 (West 1994) (stating that "[i]n any

case where there is evidence that the perpetrator of the abuse or

neglect is an addict or alcoholic *** the Department, when making

referrals for drug or alcohol abuse services, shall make such

referrals to [State licensed] facilities"); 20 ILCS 505/5(g) (West

1994) (providing that "[r]ules and regulations established by the

Department shall include provisions *** to identify children and

adults who should be referred to an alcohol and drug abuse

treatment program for professional evaluation"); 20 ILCS 505/6(a)

(West 1994) (stating that "[w]here appropriate, the case plan shall

include recommendations concerning alcohol or drug abuse

evaluation"); 20 ILCS 505/34.5 (West 1994) (directing the

Department, upon a determination that drug or alcohol abuse has

necessitated its involvement, "to refer a person to a licensed

alcohol or drug treatment program, and to include any treatment

recommendations in the person's case plan"). None of these

aforementioned provisions contemplate that DCFS itself is required

to provide direct drug treatment services to parents. By declaring

that the DCFS is now so required, the majority opinion renders

meaningless those statutory provisions directing the DCFS to refer

drug and alcohol abuse problems to other state agencies for

evaluation and treatment. See Niven v. Siqueira, 109 Ill. 2d 357,

367 (1985) (noting the presumption that the legislature did not

intend a meaningless act in enacting a statute).

     The majority's decision places enormous financial and

logistical burdens on DCFS that cannot be justified by a

straightforward analysis of the statutes at issue and,

realistically, cannot be met. Accordingly, I respectfully dissent.