# IN THE COURT OF APPEALS OF IOWA

No. 22-1419
Filed February 7, 2024

**KATHERINE AVENARIUS and PAUL AVENARIUS,**
    Plaintiffs-Appellees,

**vs.**

**STATE OF IOWA,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Samantha Gronewald, Judge.

On interlocutory appeal, the State challenges the denial of its partial motion for summary judgment on claims relating to its negligence. **AFFIRMED.**

Brenna Bird, Attorney General, and Job Mukkada, Assistant Attorney General, for appellant.

Todd N. Klapatauskas of Reynolds & Kenline, L.L.P., Dubuque, for appellee.

Heard by Bower, C.J., and Tabor and Chicchelly, JJ. Langholz, J., takes no part.

**CHICCHELLY, Judge.**

The Iowa Supreme Court granted the State interlocutory appeal of the order denying its motion for partial summary judgment. The question before the court is whether a document signed by a plaintiff expressed clear intent to waive personal injury claims resulting from the defendant's negligence. Because we agree with the district court that the form does not show Avenarius's intent to release the State from liability for such claims, we affirm.

### I. Background Facts and Proceedings.

Katherine Avenarius was employed as a police officer by the City of Dubuque when she attended the Iowa Law Enforcement Academy (ILEA) firearms instructor school in August 2015.[1] Before attending, ILEA required Avenarius to sign the following form:

> WAIVER
> RELEASE FROM LIABILITY AND
> ASSUMPTION OF RISK AGREEMENT
> FOR NON-STATE EMPLOYED LAW ENFORCEMENT OFFICERS
> . . . .
> I, Katherine M. Avenarius, . . . am currently an employee of the Dubuque Police Department . . . and in consideration of the training I am to receive I do hereby enter into this release from liability and assumption of risk agreement.
> Intending this agreement to be legally binding on me, my heirs, administrators, executors, and assigns, I hereby waive, release, and hold harmless the State of Iowa, the Iowa Law Enforcement Academy, and the Iowa Law Enforcement Academy Council and all of their agents, employees, council members, representatives, heirs, executors, administrators, successors, and assigns of and from any and all claims, demands, rights, causes of action and judgments of whatsoever, kind and nature, arising from and by reason of any and all known and unknown, foreseen and unforeseen physical or mental injuries and consequences thereof which may be suffered by me during the above referenced Iowa Law

---

[1] ILEA is a division of the government of the State of Iowa. *See generally* Iowa Code ch. 80B (2015).



Enforcement Academy training program including physical fitness testing.

Please **initial** at left to each of the terms agreed to:

\_\_\_\_\_ a) I understand that this training may involve physical contact and/or exercise and involves a risk of physical injury.

**In signing this release I assert that:**

\_\_\_\_\_ b) I have no reason to believe that I am not in good physical and/or mental health and I know of no reason that I should not or cannot engage in a rigorous physical training program.

\_\_\_\_\_ c) I will immediately advise the lead instructor of the training program of any injuries or other problems that may occur prior to or during the training program which may in any way affect my safely completing the training program.

\_\_\_\_\_ d) I am fully aware of, and do acknowledge and assume all risk of injury inherent in my participation in this training program.

\_\_\_\_\_ e) I have read and fully understand the terms and conditions of this agreement.

A failure to fully accept the terms and conditions of this waiver may result in being refused admittance into the training program.

As the signatory below, I hereby represent and warrant that I have the right, power, and authority to enter into this agreement, that I have taken all requisite action to approve execution, delivery, and performance of this agreement, and that this agreement constitutes a legal, valid and binding obligation upon itself in accordance with its terms.

Avenarius signed the form and initialed next to each statement where specified.

On the first day of firearms instructor school, Avenarius injured herself while participating in a drill. Before attending the course, Avenarius was trained to put her finger on the trigger only after locking onto a target. But while she was at the school, an ILEA firearm instructor told Avenarius to put her finger on the trigger after unholstering and drawing her firearm. Avenarius followed the instructor's direction during the drill and shot herself in the leg.

After following the provisions of the Iowa Tort Claims Act, *see* Iowa Code ch. 669, Avenarius and her husband petitioned against the State alleging

negligence and loss of consortium.[2]  The State moved for summary judgment on the negligence claims, arguing that Avenarius signed a "clear and unequivocal" waiver and release of liability.  The district court denied the motion after finding the waiver did not contain clear and unequivocal language waiving liability as to the State's negligent acts and omissions.  It also found there is a genuine issue of material fact as to whether the firearm instructor negligently instructed Avenarius to place her finger on the trigger while unholstering her weapon.  The State petitioned for interlocutory appeal, which the Iowa Supreme Court granted.

**II. Scope of Review.**

We review summary-judgment rulings for correction of errors at law.  *See Vreeman v. Jansma*, 995 N.W.2d 305, 306 (Iowa Ct. App. 2023).  "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Id.* (quoting Iowa R. Civ. Pro. 1.981(3)).  In reviewing the ruling denying summary judgment, we view the record in the light most favorable to Avenarius and indulge every legitimate inference within reason.  *See Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019).  If reasonable minds could draw different inferences from the record and reach different conclusions, summary judgment is not proper.  *See id.*

---

[2] Originally, the petition named ILEA and the firearms instructor as defendants.  It alleged negligence by the firearms instructor, negligence by ILEA, and negligence against ILEA under the doctrine of respondeat superior.  The district court granted the parties' motion to dismiss ILEA and substitute the State for the individually-named instructor.

**III. Discussion.**

The State contends the district court erred by denying its motion for summary judgment because the waiver Avenarius signed bars her negligence claims. Waivers of liability are forms of contracts, so the principles of contract law apply. *See Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993). We usually review contract interpretation, which involves ascertaining the meaning of the words used in the contract, as a question of law.[3] *Peak*, 799 N.W.2d at 543. We always review contract construction, which involves determining the legal effect of those words, as a question of law. *Id.* The cardinal rule of contract construction is that the parties' intent controls. *Id.* at 544. Our focus is on mutual intent, which is determined by what the parties said rather than what they may have meant. *Id.* Thus, a release from liability for negligence claims is valid only if the waiver contains "'clear and unequivocal language' notifying a casual reader that by signing, she agrees to waive all claims for future acts or omissions of negligence." *Lukken v. Fleischer*, 962 N.W.2d 71, 79 (Iowa 2021).

The district court found that the broad exculpatory provision could not release the State from liability for its own negligent acts or omissions:

> Here, the waiver's intention would not have been clearly expressed to [Avenarius] at the time she signed it that she was waiving any future claims of negligence as to the acts or omissions of the ILEA's instructors. [Avenarius] has eight years of previous experience with firearms, and she would likely have understood there are inherent risks with firearms. However, it would not have been apparent to her that she was releasing any and all future claims as to an injury proximately caused by the negligent acts or omissions of the instructors.

---

[3] The exception is when interpretation depends on extrinsic evidence. *Peak v. Adams*, 799 N.W.2d 535, 543 (Iowa 2011).

The State challenges this finding, arguing that the release of liability for "any and all claims" arising from "any and all known and unknown, foreseen and unforeseen physical or mental injuries and consequences thereof" sustained during the ILEA course clearly and unequivocally encompassed negligence claims. It primarily relies on *Korsmo v. Waverly Ski Club*, 435 N.W.2d 746, 747 (Iowa Ct. App. 1988), in which the court interpreted an exculpatory provision in a waiver signed by competitors in a water-skiing tournament. The waiver in *Korsmo* released the defendants "from any and all rights, claims, demands and actions of any and every nature whatsoever that I may have, for any and all loss, damage or injury sustained by [competitors] . . . before, during, and after said competitions." 435 N.W.2d at 747. The court found this clear and unambiguous language showed the plaintiff's intent to release claims in exchange for participating in the competition. *Id.* at 748. Although not specified, the court held the waiver "clearly intended to" release liability for the defendants' negligent acts. *Id.* The State claims the language of the release in *Korsmo* is "nearly identical" to the language used in the document Avenarius signed*.*

In the thirty-five years since it was decided, *Korsmo* has lost its vigor. Although *Korsmo* expresses a "generalized fear" that failing to enforce releases of liability would lead parties to stop sponsoring events, the supreme court has since rejected this fear as "speculative and overstated." *Galloway v. State*, 790 N.W.2d 252, 259 (Iowa 2010). We also note that the analysis in *Korsmo* is conclusory. The court said that failing to use the words "negligent acts" did not render the release ambiguous, noting that a contract "need not expressly specify that it will operate for negligent acts if the clear intent of the language is to provide

for such a release."[4]  *Korsmo*, 435 N.W.2d at 748.  Without further elaboration, it then held: "The words 'any and all rights, claims, demands and actions of any and every nature whatsoever . . . for any and all loss, damage or injury' is clearly intended to cover negligent acts."  *Id.*

A review of Iowa cases shows *Korsmo* is an outlier among the published decisions of our appellate courts.  The cases in which the supreme court has found a release applies to the negligent acts of the releasee have involved exculpatory clauses that specifically reference the releasee's negligence.  *See Lukken*, 962 N.W.2d at 75, 82–83 (holding that a release of "any and all liability from any and all loss or damage . . . arising out of or related to the activities offered at Mt. Crescent Ski Area whether *caused by the negligence of*" the defendants waived claims related to the releasee's negligence but not to claims involving the releasee's willful, wanton, or reckless conduct (emphasis added)); *Huber*, 501 N.W.2d at 54 (involving a release of liability for "any and all loss or damage, and any claim or demands therefor on account of injury . . . whether *caused by the negligence of the releasees or otherwise*" (emphasis added)); *see also Grabill v. Adams Cnty. Fair & Racing Ass'n*, 666 N.W.2d 592, 595 (Iowa 2003) (releasing liability "FOR ANY AND ALL LOSS OR DAMAGE . . . ARISING OUT OF OR RELATED TO THE EVENT(S), *WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE*" (emphasis added)).  The two cases in which

---

[4] In *Sweeney v. City of Bettendorf*, 762 N.W.2d 873, 879–80 (Iowa 2009), the supreme court reiterated that Iowa does not require "magic words" *if* "the intention to exclude liability for acts and omissions of a party [is] expressed in clear terms." But it noted that "the better practice is to expressly use the term 'negligence' in the exculpatory agreement."  *Sweeney*, 762 N.W.2d at 879 n.2.

the court found a release was not specific enough to encompass acts of negligence by the releasee involved exculpatory provisions that did not state the release applied to the releasee's negligence. *See Baker v. Stewarts' Inc.*, 433 N.W.2d 706, 706–08 (Iowa 1988) (finding that the waiver used by a training salon, which charged less for work performed by students, releasing liability for damages or injuries that result from its service did not extend to acts or omissions by the professional staff because that intention was not clearly and unequivocally expressed); *see also Sweeney*, 762 N.W.2d at 875, 880 (holding that a permission slip stating that the defendant was "not responsible or liable for any accidents or injuries that may occur" to children participating in a field trip "[did] not constitute an enforceable anticipatory release of claims against the City for its negligent acts or omissions in connection with the field trip").

The State also cites two recent unpublished opinions of this court: *Transgrud v. Leer*, No. 19-0692, 2020 WL 5650734, at *1, *6 (Iowa Ct. App. Sept. 23, 2020), and *Cupps v. S & J Tube, Inc.*, No. 17-1922, 2019 WL 156583, at *4–5 (Iowa Ct. App. Jan. 9, 2019). We address each in turn. Because the result in *Transgrud* relies partly on *Cupps*, we begin there.

The plaintiff in *Cupps* signed an application for employment with a temporary agency, stating:

> I acknowledge and agree that even though my work related activities may be under the control and direction of the Customer [S & J], my sole legal remedies in the event of a work related injury will be [the temporary agency's] workers' compensation insurance and will not include any claim for damage against that Customer.

2019 WL 156583, at *1. When the plaintiff slipped and fell during a work assignment with one of the agency's customers, he sued the agency's customer

for negligence. *Id.* at *1–2. Finding the employee's injury was work-related, the district court granted summary judgment for the customer based on the exculpatory clause in the signed employment application. *Id.* at 2. On appeal, we found the clause was unambiguous in limiting the employee's recovery for work-related injuries to the agency's workers' compensation.[5] *Cupps*, 2019 WL 156583, at *4–5. Because the employee waived all claims against the agency's customers, including negligence claims, we affirmed. *Id.* at 5.

In reaching our conclusion in *Cupps*, this court distinguished *Sweeney* and *Baker* based on the availability of a remedy:

> In *Sweeney* and *Baker*, the exculpatory clauses purported to relieve all liability and would have left the injured parties without any remedy. Here, the exculpatory clause does not extinguish all remedies but directs that [the plaintiff]'s sole remedy will be workers' compensation benefits, which he admitted he received in a settlement. *See Kelly*[, 2012 WL 5356104, at *3] (distinguishing the reasoning of *Sweeney* where the exculpatory clause does not prevent recovery but directs recovery to workers' compensation).

*Id.* at *4 n.2. The same distinction is not present here because the exculpatory provision leaves Avenarius without remedy. On this basis, the facts are more akin to *Sweeney* and *Baker* than to *Cupps* and the cases cited in footnote 5.

We turn then to *Transgrud*, which involved a plaintiff who was injured while riding as a passenger in a semi-tractor. 2020 WL 5650734, at *1. The plaintiff's husband drove the vehicle, which his employer owned. *Id.* Before riding in the

---

[5] *Cupps* is one of several cases upholding similar exculpatory provisions in contracts for temporary employment. *See Taylor v. Gazette Commc'ns, Inc.*, No. 19-1611, 2020 WL 3265025, at *3 (Iowa Ct. App. June 17, 2020) ("We do not find the CEA's exculpatory clause to be materially distinguishable from *Cupps . . . .*"); *Hargrave v. Grain Processing Corp.*, No. 14-1197, 2015 WL 1331706, at *3 (Iowa Ct. App. Mar. 25, 2015); *Kelly v. Riser, Inc.*, No. 11-1898, 2012 WL 5356104, at *3 (Iowa Ct. App. Oct. 31, 2012).

vehicle, the plaintiff signed a document titled "PASSENGER AUTHORIZATION AND RELEASES OF LIABILITY," stating:

> By signing below, Passenger acknowledges and agrees that Passenger is not an employee of V&M or an independent contractor providing goods or services to V&M. Passenger further acknowledges and understands that V&M will not pay any amount of any accident, injury, loss, or damage arising out of or related to Passenger riding in the equipment and that V&M will not provide a policy of insurance that provides coverage, including workers' compensation coverage, for Passenger or Passenger's property.

*Id.* Under a section titled, "RELEASES OF LIABILITY," it states:

> In consideration for V&M's authorization to allow Passenger to ride in the Equipment, Passenger . . . , by signing below, hereby releases V&M, with respect to the authorized transportation, from any and all claims, liability, rights, actions, suits, and demands . . . that Passenger may have against V&M. . . . Moreover, this signed Release may be pleaded by V&M as a counterclaim to or as a defense in bar or abatement of any action of any kind whatsoever brought, instituted, or taken by or on behalf of Passenger.

*Id.* When the plaintiff sued the employer for its negligence in maintaining the vehicle and training its drivers on how to handle unusual situations, the district court found the release was valid and granted summary judgment in favor of the employer. *Id.*

On appeal, the plaintiff cited *Sweeney* and argued the signed document was ambiguous because it failed to state the type of liability it released clearly and unequivocally. *Id.* at *5. We distinguished the document from the permission slip in *Sweeney*, finding that its "provisions, including multiple titles in all capital letters highlighting the document as a release, are clear and unequivocal and would be apparent to a casual reader." *Id.* at *6. We then compared it to the release in *Cupps*:

In that case, we considered the phrase "any claim for damage" as used in an employment application submitted to a temporary employment agency. [*Cupps*, 2019 WL 156583,] at *1. Rejecting the argument that the phrase was ambiguous and distinguishing *Sweeney*, our court ruled the phrase "clearly means that if the signer suffers a work-related injury, the only remedy is [the agency's] workers' compensation and the remedies do not include any claim for damage, including negligence." *Id.* at *5. We find *Cupps* persuasive and conclude the phrases "will not pay any amount of any accident, injury, loss or damage arising out of or related to Passenger riding in the equipment" and "hereby releases [the employer] from any and all claims, liability, rights, actions, suit, and demands" are unambiguous. By signing the release, [the plaintiff] acknowledged [the employer] would not pay for any injuries she received while riding in Unit #388 as Vee's passenger, including injuries arising from allegedly negligent conduct. The district court correctly concluded the release was not ambiguous.

*Transgrud*, 2020 WL 5650734, at *6.

To the extent that the releases in *Cupps* and *Transgrud* state the signer releases "any" or "all" claims against the releasee, Avenarius's release "from any and all claims, demands, rights, causes of action and judgments of whatsoever, kind and nature" is similar. But the similarities are superficial. The release in *Cupps* is limited to waiver of damage claims against an agency customer for "work related injury." 2019 WL 156583, at *1. It further specifies that "my sole legal remedies in the event of a work related injury will be the [agency's] workers' compensation insurance." *Id.* The release in *Transgrud* applies only to damage claims "arising out of or related to Passenger riding in the equipment" and "with respect to the authorized transportation." 2020 WL 5650734, at *1. The document also specifies that "that Passenger is not an employee of V&M or an independent contractor" and that the employer "will not provide a policy of insurance that provides coverage, including workers' compensation coverage, for Passenger or Passenger's property." *Id.*

The release Avenarius signed uses the broadest language possible, waiving damage claims "arising from and by reason of any and all known and unknown, foreseen and unforeseen physical or mental injuries and consequences." It applies to injuries that "may be suffered by [Avenarius] during the . . . [ILEA] training program" without specifying the nature of those injuries. The only additional specification is a statement that the program would include "physical fitness testing." Avenarius was also required to place her initials next to statements that further reference her physical and mental fitness and a "rigorous physical training program." One statement required that Avenarius inform the instructors immediately of "any injuries or other problems" she suffers that "may in any way affect [her] safely completing the training program." The statement implies that Avenarius would be at risk of injuries inherent to her rather than ones from external sources. Another statement says that Avenarius acknowledges and assumes "all risk of injury inherent in my participation in this training program" but, again, does not specify the risks encompassed. There is no clear expression of Avenarius's intent to release the State from liability for claims related to the negligent acts of ILEA or its instructors, either in the express language of the release or the context provided. Because we will not find such intent unless clearly and unambiguously expressed, we agree that the release does not apply to claims of negligence by ILEA or its instructors. On this basis, the district court properly denied the State's motion for partial summary judgment.[6]

**AFFIRMED.**

---

[6] Because we affirm on this ground, we need not address Avenarius's claims that the waiver is not enforceable as a contract of adhesion or against public policy.