# IN THE COURT OF APPEALS OF IOWA

No. 25-0053
Filed December 3, 2025

**RYAN MOSLEY,**

      Plaintiff-Appellant,

**vs.**

**QUAD-CITY HOCKEY ASSOCIATION, MICHELLE ARNDT, ANNE GANNON, ZACH HONERT, TOM PETERSON, TODD MAHONEY, DARREN MCMILLAN, AMY ROTERT, JAKE TOPOROWSKI and MELODY WRIGHT,**

      Defendants-Appellees.
_____

Appeal from the Iowa District Court for Scott County, Elizabeth O'Donnell, Judge.

Ryan Mosley appeals the district court's order granting the defendants' motion for summary judgment. **REVERSED AND REMANDED.**

Nicholas J. Huffmon (argued) of Brooks Law Firm, P.C., Rock Island, for appellant.

Matthew D. Jacobson (argued) and Bryn E. Hazelwonder of Whitfield & Eddy, P.L.C., Des Moines, for appellee Quad-City Hockey Association.

Richard A. Davidson and Maegan M. Gorham of Lane & Waterman LLP, Davenport, for appellees.

Heard at oral argument by Tabor, C.J., and Badding and Sandy, JJ.

**SANDY, Judge.**

Ryan Mosley appeals the district court's order granting the Quad-City Hockey Association ("QCHA") and individually named defendants' (collectively, the "defendants") motion for summary judgment. Mosley argues the district court erred in holding that an enforceable alternative dispute resolution ("ADR") clause existed within a waiver of liability form he had signed. Mosley further argues that the district court erred in holding the waiver he signed applies to his claims against defendants, and that USA Hockey's bylaws apply to his claims. We reverse and remand.

I. **Background Facts and Proceedings.**

The QCHA is a nonprofit corporation incorporated in the State of Iowa. The individual defendants in this case are directors, officers, and board members of the QCHA. Mosley was a member of the QCHA from 1998 through 2019, a QCHA coach from 2015 to 2019, and served on the QCHA Board from 2019 through July 2021.

In 2020, Mosley signed a Waiver of Liability, Release, Assumption of Risk and Indemnity Agreement drafted by defendants' parent company, USA Hockey.[1]

---

[1] The parties agree that Mosley signed a waiver of liability form. However, the parties disagree over which version of the waiver is at issue, even though the slight differences in language would not affect our analysis. Mosley claims that the 2019-2020 waiver should be analyzed because his "involvement in the QCHA ended in or around 2019." Yet Mosley's own petition states he was involved with QCHA from 2020 to 2021, and Exhibit 2 shows a registration receipt completed by Mosley on October 27, 2020, valid through August 31, 2021. Meanwhile, the defendants cite to the 2022–2023 registration waiver, even though Mosley was no longer affiliated with QCHA in 2022 and there is no evidence showing that Mosley signed the 2022–2023 registration waiver. Since Mosley filed his petition during the time frame contemplated by the 2020–2021 registration waiver, we analyze the 2020–2021 registration waiver (Exhibit 2).

The waiver was valid through August 2021. In July 2021, Mosley filed a petition asserting the following claims against some or all of the defendants: (1) breach of fiduciary duty of care; (2) breach of fiduciary duty of good faith, fair dealing, and candor; (3) breach of fiduciary duty of obedience; (4) breach of contract; and (5) aiding and abetting, conspiracy, and concerted action.

Defendants moved for summary judgment, arguing that Mosley's claims were subject to a mandatory ADR clause established by the terms of the waiver of liability signed by Mosley. The relevant terms of the waiver the district court found established the ADR clause are as follows:

> As a condition of registration and membership in USA Hockey and participation in USAH and member team activities, Participant . . . agrees to abide by and be bound under the playing rules and governing regulations of USA Hockey, including the USA Hockey By-Laws[2] and the mandatory dispute resolution and discipline provisions, as published in the current USA Hockey Annual Guide . . . . Any dispute, claim or cause of action regarding the terms of this agreement or its subject matter shall be brought (i) individually, without resort to any form of class or collective action, and without joinder or consolidation of claims of third parties, and (ii) exclusively in the manner provided in the applicable rules of USA Hockey (including, without limitation USA Hockey Bylaw 10).

Mosley resisted the motion for summary judgment. He primarily argued that the ADR clause is not enforceable, and that even if it were, the clause does not apply to his claims. The district court granted the defendant's motion for summary judgment, and Mosley appealed.

---

[2] The waiver provision uses "Bylaws" and "By-laws" interchangeably. We have elected to used "Bylaws" throughout our opinion.

## II. Standard of Review.

"We review summary judgment rulings for correction of errors at law." *Feeback v. Swift Pork Co.*, 988 N.W.2d 340, 346 (Iowa 2023) (citation omitted). "Summary judgment is proper when the movant establishes there is no genuine issue of material fact and it is entitled to judgment as a matter of law." *Est. of Morgan v. Union Pac. R.R. Co.*, 20 N.W.3d 232, 237 (Iowa 2025) (citation omitted). "We view the evidence in the light most favorable to the nonmoving party, who is entitled to every legitimate inference that we may draw from the record." *Id.* (citation omitted).

## III. Discussion.

### A. Alternative Dispute Resolution

Mosley first challenges the district court's finding that an enforceable ADR clause existed within the waiver of liability provision for the 2020–2021 season. Waivers of liability are a type of contract, so principles of contract law apply to them. *Huber v. Hovey*, 501 N.W.2d 53, 55 (Iowa 1993). "An enforceable contract has three elements: (1) offer, (2) acceptance, and (3) consideration." *Myers v. Myers*, 955 N.W.2d 223, 229 (Iowa Ct. App. 2020). An enforceable waiver must have "clear and unequivocal language" that notifies a casual reader that they agree to waive all claims for future acts or omissions of negligence by signing. *Lukken v. Fleischer*, 962 N.W.2d 71, 79 (Iowa 2021) (quoting *Sweeney v. City of Bettendorf*, 762 N.W.2d 873, 878–79 (Iowa 2009)).

The district court held that the waiver provision was a valid contract and created an enforceable ADR clause, and we agree. In exchange for membership, USA Hockey offered events and community membership and Mosley agreed to

surrender certain legal claims. Mosley's acceptance is evidenced by his receipt confirming his registration for the 2020–2021 hockey season. This receipt contained the relevant waiver of liability provision. However, the main question for us is not whether an enforceable ADR clause existed or was enforceable. Rather, the relevant question before us is whether the waiver provision applies to Mosley's claims. We think it does not.

### B. Waiver Provision

When reviewing a contract, "[t]he intent of the parties controls, and unless the contract is ambiguous, intent is determined by the plain language of the contract." *Terry v. Dorothy*, 950 N.W.2d 246, 250 (Iowa 2020). "The most important evidence of the parties' intentions at the time of contracting is the words of the contract." *Peak v. Adams*, 799 N.W.2d 535, 544 (Iowa 2011).

The waiver provision is not ambiguous, and begins with a paragraph in all capital letters stating the purpose of the waiver:

> It is the purpose of this agreement for the participant . . . to exempt, waive, release and relieve releasees from liability for bodily and personal injury and illness, including wrongful death, property damage, and any other loss suffered by participant *caused by or arising from any negligent act or omission*, including the negligence of releasees, while participating in any USA Hockey activity or event.

(emphasis added). This section of the waiver provision states that Mosley waived liability for any injury which may be caused by or that arose out of a negligent act or omission. The plain language of the waiver focuses specifically on potential claims arising from negligent acts or omissions. This language demonstrates the defendants did not intend for the waiver to cover or contemplate non-negligence-based causes of action, even if they wish it would have in retrospect. Mosley

brings five claims against the defendants, none of which are acts of negligence or an accusation of a negligent act or omission. They are claims relating to corporate governance (breach of fiduciary duties); a breach of contract; and aiding and abetting; all distinct from the negligence actions due to their intentional nature. The plain language of the waiver does not contemplate waiver of intentional acts, which are the claims at issue in Mosley's suit.

Therefore, while Mosley has waived liability for any injury, damage, or loss caused by or arising from any *negligent* act or omission—viewing the contract in the light most favorable to Mosley—the parties intended only to waive liability for claims of negligence. The district court erred in holding the waiver provision applied to Mosley's claims.

### C. Bylaws

Mosley argues that USA Hockey's bylaws are similarly inapplicable to his claims. We agree. In addition to the provision stated above, the waiver agreement further provides:

> As a condition of registration and membership in USA Hockey and participation in USAH and member team activities, Participant… agrees to abide by and bound under the playing rules and governing regulations of USA Hockey, including the USA Hockey By-Laws and the mandatory dispute resolution and discipline provisions, as published in the current USA Hockey Annual Guide . . . . *Any dispute, claim or cause of action regarding the terms of this agreement or its subject matter* shall be brought (i) individually, without resort to any form of class or collective action, and without joinder or consolidation of claims of third parties, and (ii) exclusively in the manner provided in the applicable rules of USA Hockey (including, without limitation USA Hockey Bylaw 10).

(Emphasis added.)

As previously established, the waiver provision does not apply to Mosley's claims as they are not claims of negligence. So Mosley's claims are not claims "regarding the terms of this agreement" and are not subject to the agreement's conflict-resolution requirements outlined in the second provision. Thus, his claims do not trigger the agreement's requirement that applicable claims must be brought pursuant to the ADR procedures found in the USA Hockey rules and Bylaw 10.

Nonetheless, even if we were to assume without deciding that the terms of the bylaws applied to Mosley's claims, the bylaws exempt Mosley's claims from arbitration. It is true that Bylaw 10.A(2) states "[i]t is the specific purpose of this Bylaw 10 to provide a uniform method of resolving Disputes[3] that is a full and complete substitute for any court proceedings." But Bylaw 10.G(3)(g) states that arbitration procedures do not apply to "monetary claims or disputes between parties," exempting them from Bylaw 10's other ADR provisions. Mosley's claims are monetary claims[4] and are specifically exempted from arbitration proceedings under the bylaws.

The defendants also argue that Mosley's claims are encompassed under Bylaw 10.C's unified procedure section.[5] However, Bylaw 10.D(3)(h) states

---

[3] "Disputes" is defined as, "All claims, demands, discipline or disputes."
[4] Our supreme court has described claims asserting monetary damages and arising from intentional acts as "monetary claims." *See Ezzone v. Riccardi*, 525 N.W.2d 388, 400 (Iowa 1994). Thus, it makes sense that USA Hockey would require participants to agree to the waiver agreement in addition to their agreement to be governed by the bylaws. But since a negligence action asserting monetary damages against USA Hockey could potentially be considered a monetary claim exempted from Bylaw 10's ADR requirements, the waiver agreement serves to provide USA Hockey with additional protections by exempting it from liability for such negligence claims.
[5] The first time the defendants raised this argument was at oral arguments.

"[d]isputes concerning liability or damages arising from personal injury claims, torts or *other civil claims* are not subject to the Unified Procedure." (Emphasis added). Mosley's claims would fall into "other civil claims" under this bylaw, exempting them from the unified procedure bylaw. So even if the bylaws did apply for Mosley's claims, Bylaw 10.G(3)(g) and Bylaw 10.D(3)(h) would exempt Mosley's claims from arbitration and unified procedure requirements.

## IV. Conclusion.

Accordingly, we reverse the district court's order granting the defendants' motion to dismiss. We remand to the district court for entry of an order denying the defendants' motion to dismiss and order further proceedings.

**REVERSED AND REMANDED.**